US BANK N.A. as Trustee for
Residential Funding Co.,
LLC, Appellee

v.

Pamela MALLORY and
Jamall Roundtree

Appeal of Pamela Mallory, Appellant.

Superior Court of Pennsylvania.

Argued June 10, 2009.
Filed Sept. 14, 2009.
Reargument Denied Nov. 23, 2009.

Kerry E. Smith, Philadelphia, for appellant.

Henry F. Reichner, Philadelphia, for appellee.

BEFORE: STEVENS, KLEIN, and KELLY, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the order entered in the Court of Common Pleas of Philadelphia County denying Appellant Pamela Mallory's [1] petition to strike and/or open the default judgment entered in favor of Appellee U.S. Bank, N.A., as Trustee for Residential Funding Co., LLC. Appellant contends (1) the default judgment should have been stricken since the failure to plead properly an assignment of mortgage in a mortgage foreclosure action is a fatal defect apparent on the face of the record; (2) Appellee did not have standing to bring the instant mortgage foreclosure action, and consequently, the default judgment should be stricken; (3) the trial court erred in denying Appellant's petition to open the default judgment without considering Appellant's defenses to the action;

---

1. Jamall Roundtree, who is Appellant's estranged husband, was named as a defendant in this action and default judgment was entered against him jointly with Appellant with regard to the mortgage foreclosure. However, Mr. Roundtree never filed a separate petition seeking to strike and/or open the default judgment and he has not filed a separate brief on appeal.

and (4) the default judgment should be opened since Appellant met all prongs necessary for the opening of default judgments. We affirm.

¶ 2 The relevant facts and procedural history are as follows: On November 14, 2007, Appellee filed a complaint in mortgage foreclosure against Appellant averring that, on August 15, 2006, Appellant executed a mortgage for residential property located at 6442 North Syndenham Street in favor of Mortgage Electronic Registration Systems, Inc., (hereinafter MERS) as a Nominee for Mortgage Lenders Network USA, Inc., (hereinafter MLN) in the amount of $89,100.00. Appellee averred that it was the legal owner of the mortgage and was in the process of formalizing the assignment thereof. Appellee further averred that Appellant was in default of the mortgage since she had not made any payments since June 1, 2007.

¶ 3 Attached to the complaint was a copy of the subject mortgage, as well as an Act 91 Notice informing Appellant she needed to take action to save her home from foreclosure, explaining how Appellant could cure the default, and encouraging her to contact an attorney. The complaint also contained the requisite Notice to Defend informing Appellant she should respond to the complaint within twenty days and take the complaint to a lawyer at once. The certified docket entries reveal that personal service of the complaint was made upon Appellant on November 19, 2007.

¶ 4 Appellant failed to respond to Appellee's complaint, and on January 3, 2008, upon praecipe of Appellee, the prothonotary entered a default judgment against Appellant and in favor of Appellee in the amount of $96,096.03. The certified docket entries reveal that notice of the default judgment was provided to Appellant on that same date. On January 15, 2008, Appellee filed a motion to reassess damages, as well as a supporting memorandum, averring that, on April 1, 2008, the property was listed for a sheriff's sale and additional expenses had been incurred. As such, Appellee sought judgment in the amount of $101,085.91. The docket entries reveal that service of the motion to reassess damages was made upon Appellant by regular mail on January 30, 2008.

¶ 5 Appellant did not respond, and on February 15, 2008, the trial court entered an order directing the prothonotary to amend the default judgment and the sheriff to amend the writ *nunc pro tunc* to reflect the amount of $101,085.91, plus interest and the sheriff's commission. The docket entries reveal that the prothonotary provided notice to Appellant on that same date.

¶ 6 Appellant did not respond, and the property was listed for a sheriff's sale for April 1, 2008. However, prior thereto, on March 25, 2008, Appellant filed a praecipe to proceed *informa pauperis* and a petition to strike and/or open the default judgment, resulting in the sheriff's sale being stayed. In her petition to strike and/or open the default judgment, Appellant averred that the default judgment should be stricken since it is clear on the face of the record that the underlying complaint violated the Rules of Civil Procedure specific to mortgage foreclosure actions in that Appellee did not set forth in the complaint any assignment of the mortgage, including a statement of the date and place of the recording of the assignment, as is required by Pa.R.C.P. 1147(a)(1). Appellant further averred that, pursuant to Pa. R.C.P. 1019(i), it was improper for Appellee to merely assert it was the owner of the mortgage and was "in the process of formalizing assignment of same." Appellant also argued that the default judgment should be stricken since the written assignment conveying the mortgage from

MERS to Appellee was not executed until December 28, 2007, after the complaint was filed, and recorded on January 15, 2008, after the default judgment was entered.

¶ 7 With regard to opening the default judgment, Appellant contended she is a low-income single mother who inherited the house located at 6442 North Syndenham Street. Appellant deeded the property to herself and Jamall Roundtree on September 9, 2003, and on that same date, she and Mr. Roundtree took out a mortgage for $60,700.00 from Chase. Appellant and Mr. Roundtree married on June 25, 2004, and on October 6, 2004, Appellant obtained a restraining order against Mr. Roundtree and evicted him from the house. On approximately November 17, 2005, Appellant discovered that the Internal Revenue Service (IRS) had placed a tax lien on the house due to Mr. Roundtree's failure to pay taxes.

¶ 8 In the summer of 2006, Appellant contacted American Mortgage Incorporated (AMI) to inquire about refinancing her mortgage so that she could pay Mr. Roundtree's debts and remove his name from the property's deed. Arlene, an AMI broker, secured for Appellant a $89,100.00 30–year adjustable rate mortgage through MLN. Appellant and Mr. Roundtree signed their names to the mortgage; however, the very next day, Appellant exercised her right to cancel the loan.

¶ 9 Arlene and Arlene's supervisor jointly called Appellant and "berated" her for canceling the mortgage. The AMI employees assured Appellant she could afford the mortgage payments and, fearing she would lose her home, Appellant executed the subject mortgage on August 15, 2006. Appellant averred she was "rushed" through the settlement of the mortgage, she did not review any of the documents, she did not understand the balloon feature of the mortgage, and she was unaware that the mortgage contained a two-year prepayment penalty. She further averred the Truth In Lending Act disclosure statement for the mortgage understated the finance charge, and while a deed purporting to transfer the subject property to her only was filed, she averred the signature on the deed was a forgery.

¶ 10 She alleged she was a victim of a predatory mortgage broker who exploited her fear of her abusive husband and of losing her home to the IRS due to her husband not paying federal taxes. Appellant averred meritorious defenses, namely, that she lacked a security interest in the property due to her rescission of the loan, the loan should not be enforced since it is a predatory loan, the loan was void due to the broker's violation of Pennsylvania's Credit Services Act, and the loan violated Pennsylvania's consumer protection statute.

¶ 11 Moreover, Appellant averred the judgment should be opened since the petition was timely filed and the delay in filing the petition to open was not unreasonable given Appellant's lack of legal and financial sophistication, as well as her efforts to avoid foreclosure. Appellant averred she struggled to make the mortgage payments, and in the summer or fall of 2007, she contacted a representative of the mortgage company to explain her financial situation. Approximately a week later, Appellant received a letter from the mortgage company denying her loss mitigation assistance claim, and on July 27, 2007, after receiving an Act 91 notice, she made a payment over the phone. On October 30, 2007, Appellant went to Northwest Counseling Services and applied for a Homeowner's Emergency Mortgage Assistance Program (HEMAP) loan. When she received the instant mortgage foreclosure complaint, she called Appellee's attorney and was told

**991**

she would have to pay $9,000.00 to stop the foreclosure. On December 28, 2007, HEMAP denied Appellant's application for a loan, Appellant filed an appeal, and a hearing was held on February 22, 2008. While reviewing the loan documents, a Northwest housing counselor realized the subject mortgage had the hallmarks of being a predatory subprime loan and, on approximately January 22, 2008, the counselor sent a letter to the Pennsylvania Human Relations Commission (PHRC) and Central Legal Services, Inc. to investigate. The PHRC telephoned Appellant during the last week of January and first two weeks of February of 2008, and a PHRC investigator encouraged Appellant to telephone Community Legal Services, Inc. to avoid a sheriff's sale. On February 11, 2008, Appellant contacted an attorney from Central Legal Services, Inc., and the instant petition to strike and/or open the default judgment was filed on March 25, 2008.

¶ 12 On April 14, 2008, Appellee filed an answer and supporting memorandum to Appellant's petition to strike and/or open the default judgment, and on April 21, 2008, Appellant filed a reply. By order entered on June 4, 2008, the trial court denied Appellant's petition to strike and/or open the default judgment, and this timely appeal followed. The trial court did not order Appellant to file a Pa.R.A.P. 1925(b) statement, and no such statement was filed.[2] On January 14, 2009, the trial court filed a brief opinion indicating it was relying on the reasoning provided in its previously filed order.

¶ 13 Appellant's first contention is that the trial court erred in denying her petition to strike as there was a fatal defect apparent on the record. Specifically, Appellant contends that Appellee should have either attached to its complaint a written assignment of the mortgage, incorporated the written assignment by reference, or provided an explanation as to why a copy of the written assignment was not available. Appellant contends Appellee's failure to do so violates Pa.R.C.P. 1019. Moreover, Appellant contends that Appellee's complaint failed to state a cause of action pursuant to Pa.R.C.P. 1147 since the assignment of the mortgage was not properly pled.

A petition to strike a judgment is a common law proceeding which operates as a demurrer to the record. A petition to strike the judgment may be granted only for a fatal defect or irregularity appearing on the face of the record.... An order of the court striking a judgment annuls the original judgment and the parties are left as if no judgment had been entered.

*Cintas Corp. v. Lee's Cleaning Servs.,* 549 Pa. 84, 89–90, 700 A.2d 915, 917 (1997). Also, "[w]hen deciding if there are fatal defects on the face of the record for the purposes of a petition to strike a judgment, a court may only look at what was in the record when the judgment was entered." *Id.* at 90, 700 A.2d at 917.

*Brooks v. B & R Touring Co.,* 939 A.2d 398, 400 (Pa.Super.2007). Finally, where a fatal defect or irregularity is apparent from the face of the record, the prothonotary will be held to have lacked the authority to enter default judgment and the default judgment will be considered void. *State Farm Ins. Co. v. Barton,* 905 A.2d 993 (Pa.Super.2006).

**2.** Thereafter, following Appellee's filing of a motion to reassess damages, the trial court entered an order on November 7, 2008, directing the prothonotary to amend the judgment and the sheriff to amend the writ *nunc pro tunc* to reflect damages in the amount of $111,832.07, plus interest and the sheriff's commission.

¶ 14 Here, in the mortgage complaint, with regard to the assignment of the mortgage, Appellee averred the following:

> Plaintiff is now the legal owner of the mortgage and is in the process of formalizing an assignment of same. The mortgage and assignment(s), if any, are matters of public record and are incorporated herein by reference in accordance with Pa.R.C.P. 1019(g); which Rule relieves the Plaintiff from its obligations to attach documents to pleadings if those documents are of public record.

¶ 15 Thereafter, as Appellant admits, the written assignment of the mortgage to Appellee was executed on December 28, 2007, which was prior to the entry of default judgment, and recorded on January 15, 2008. The issue is whether Appellee's averments in the complaint, combined with the subsequent written execution and recording of the assignment, resulted in a "fatal defect" apparent on the record such that the default judgment should have been stricken.

■■ ¶ 16 Pa.R.C.P. 1147 [3] provides, in relevant part, the following:

**Rule 1147. The Complaint**

(a) The plaintiff shall set forth in the complaint:

(1) the parties to and the date of the mortgage, and of any assignments, and a statement of the place of record of the mortgage and assignments;

* * *

Pa.R.C.P. 1147(a)(1) (bold in original).

¶ 17 Pa.R.C.P. 1019 provides, in relevant part, the following:

**Rule 1019. Contents of Pleadings. General and Specific Averments**

* * *

(g) Any part of a pleading may be incorporated by reference in another part of the same pleading or in another pleading in the same action. A party may incorporate by reference any matter of record in any State or Federal court of record whose records are within the county in which the action is pending, or any matter which is recorded or transcribed verbatim in the office of the prothonotary, clerk of any court of record, recorder of deeds or register of wills of such county.

* * *

(i) When any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof, but if the writing or copy is not accessible to the pleader, it is sufficient so to state, together with the reason, and to set forth the substance in writing.

Pa.R.C.P. 1019(g), (i) (bold in original).

■ ¶ 18 We conclude that there was not a fatal defect apparent on the record such that the trial court erred in denying Appellant's petition to strike. In its complaint, Appellee sufficiently set forth the existence and date of the mortgage, the

---

**3.** We note that:

> The holder of a bond and mortgage can proceed *in rem* or *in personam* to enforce his claim. He may proceed by an action of mortgage foreclosure or by an action on the bond which the mortgage secures. In actions of mortgage foreclosures the procedure is governed primarily by the Rules of Civil Procedure. An action of mortgage foreclosure is commenced by the filing of a complaint, Pa.R.C.P. 1143.... [I]n a mortgage foreclosure action, ... the action is *in rem* and binds only the mortgage property. *Levitt v. Patrick*, 976 A.2d 581, 591 (Pa.Super.2009) (quotation omitted). *See* Pa.R.C.P. 1141(b) (indicating that actions of mortgage foreclosure "shall be in accordance with the rules relating to a civil action[.]").

fact MERS, as nominee for MLN, was the mortgage holder, the fact Appellee was now the legal owner of the mortgage, thereby indicating it had assumed all the rights and remedies related to the mortgage, and the fact Appellee was seeking to formalize the assignment. Simply put, Appellee's complaint sufficiently put Appellant on notice of Appellee's claim of interest with regard to the subject mortgage. Contrary to Appellant's suggestion, we conclude that Pa.R.C.P. 1147(a)(1) does not require that a party have a recorded assignment as a prerequisite to filing a complaint in mortgage foreclosure. *See generally Manor Building Corp. v. Manor Complex Associates, Ltd.,* 435 Pa.Super. 246, 645 A.2d 843 (1994) *(en banc)* (holding that, under Pa.R.C.P. 2952, regarding confession of judgments for money, assignees suing in their own name are not required to set out assignment verbatim or attach a copy of assignment as an exhibit to their pleading; it is sufficient if they state facts and date of assignment and parties thereto).

¶ 19 Moreover, Appellee's averment that it was in the process of formalizing the assignment sufficiently explained why, under Pa.R.C.P. 1019, a copy of the written assignment was not attached to the complaint. Thereafter, as Appellee explained in the complaint that it was in the process of doing, the written assignment was executed on December 28, 2007, and recorded on January 15, 2008. We are convinced that Appellee adequately met the require-

ments of Pa.R.C.P. 1147 and 1019, and we note that, to the extent Appellant believes Appellee was not the legal owner of the mortgage, who was in the process of formalizing the assignment, then the proper recourse would have been to go beyond the face of the record and seek to open the judgment on this basis. *See Mother's Restaurant, Inc. v. Krystkiewicz,* 861 A.2d 327, 336 (Pa.Super.2004) *(en banc)* ("[I]f a party seeks to challenge the truth of factual averments in the record at the time judgment was entered, then the party should pursue a petition to open the judgment, not a petition to strike the judgment.") (quotation and citations omitted).

¶ 20 Intertwined with Appellant's first contention is her argument that the trial court should have granted her petition to strike since it was apparent on the face of the record that Appellee did not have standing to file a complaint in mortgage foreclosure against Appellant. The "crux" of Appellant's argument is that, before Appellee could file a complaint in mortgage foreclosure, Appellee was required to have executed and recorded a written assignment from MERS, thereby indicating it was the real party in interest. We reject this argument.[4]

¶ 21 Pa.R.C.P. 2002 provides, in relevant part, that "[e]xcept as otherwise provided . . . all actions shall be prosecuted by and in the name of the real party in interest, without distinction between contracts under seal and parol contracts." Pa.R.C.P.

4. The parties have devoted a significant portion of their briefs to arguing whether Appellant's claim implicates subject matter jurisdiction and/or whether the claim is waived for failing to present it in the lower court. We have reviewed Appellant's petition to strike and/or open the default judgment, along with the supporting memorandum, and conclude that Appellant adequately presented the instant claim therein. In any event, as this Court indicated in *Mother's Restaurant, Inc.,*

*supra,* a claim that a default judgment should be stricken may be raised for the first time on appeal since "[t]he courts of this Commonwealth have long held that an individual may seek to strike a void judgment at any time . . . [and] may even seek to strike a judgment after a trial court has previously denied his/her petition to open the same judgment." *Mother's Restaurant, Inc.,* 861 A.2d at 337 (citations omitted).

2002(a). In *Cole v. Boyd*, 719 A.2d 311, 312–313 (Pa.Super.1998), this Court indicated that a real party in interest is a "[p]erson who will be entitled to benefits of action if successful. . . . [A] party is a real party in interest if it has the legal right under the applicable substantive law to enforce the claim in question." (quotation marks and quotation omitted).

¶ 22 In the case *sub judice*, as Appellee averred in its complaint, it was the "legal owner" of the mortgage, thereby indicating it was the holder of the mortgage's note. Moreover, prior to the entry of default judgment, as Appellee indicated in its complaint it was going to do, an assignment of the mortgage was executed between Appellee and MERS. Therefore, we disagree with Appellant's assertion that it was apparent from the face of the record that Appellee was not a real party in interest such that the trial court should have granted her motion to strike the default judgment. *See generally Levitt v. Patrick*, 976 A.2d 581 (Pa.Super.2009) (indicating a mortgage secures the note); *Brown v. Esposito*, 157 Pa.Super. 147, 42 A.2d 93 (1945) (indicating assignee may sue as real party in interest); *American Society For Testing & Materials v. Corrpro Companies, Inc.*, 292 F.Supp.2d 713 (E.D.2003) (indicating assignee stands in shoes of the assignor, assumes his rights, and since he has a right to be enforced, is a "real party in interest").[5] Simply put, contrary to Appellant's suggestion, the recording of an assignment of the mortgage was not a prerequisite to Appellee having standing to seek enforcement of the mortgage via a mortgage foreclosure action.[6]

¶ 23 Appellant's next claim is that the trial court erred in denying her petition to open the default judgment. Specifically, Appellant contends (1) the trial court misapplied the tripartite test by failing to consider whether Appellant has a meritorious defense, and (2) Appellant demonstrated her petition to open was timely filed under the circumstances and she has a reasonable excuse for failing to file a timely answer.

> It is well settled that a petition to open a default judgment is an appeal to the equitable powers of the court, and absent an error of law or a clear, manifest abuse of discretion, it will not be disturbed on appeal. An abuse of discretion occurs when a trial court, in reaching its conclusions, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will.

*ABG Promotions v. Parkway Publishing, Inc.*, 834 A.2d 613, 615–16 (Pa.Super.2003) (en banc) (quotations, quotation marks, and citations omitted).

¶ 24 Generally speaking, a default judgment may be opened if the moving party has (1) promptly filed a petition to open the default judgment, (2) provided a reasonable excuse or explanation for failing to file a responsive pleading, and (3) pleaded a meritorious defense to the alle-

---

**5.** Although we are not bound by the federal court's opinion, we find the reasoning in this regard to be persuasive.

**6.** Mortgages are recorded to provide notice to the world as to whose interest encumbers title. However, as the Pennsylvania Commonwealth Court has persuasively noted, "Pennsylvania recording laws . . . do not render invalid an unrecorded interest in land." *Commonwealth, Pennsylvania Game Commis-*

*sion v. H.I. Ulrich*, 129 Pa.Cmwlth. 376, 565 A.2d 859, 862 (1989) (citation omitted). Moreover, with regard to the assignment of a mortgage, as this Court has noted, "the fact that [an] assignment was unrecorded did not disprove that there had been a valid assignment[.]" *Fusco v. Hill Financial Savings Association*, 453 Pa.Super. 216, 683 A.2d 677, 681 (1996).

gations contained in the complaint.[7] *McFarland v. Whitham,* 518 Pa. 496, 544 A.2d 929 (1988); *Seeger v. First Union National Bank,* 836 A.2d 163 (Pa.Super.2003). Moreover, we note the trial court cannot open a default judgment based on the "equities" of the case when the defendant has failed to establish all three of the required criteria. *Seeger, supra.*

¶ 25 With regard to the first prong, whether the petition to open was timely filed, we note:

> The timeliness of a petition to open judgment is measured from the date that notice of the entry of the default judgment is received. The law does not establish a specific time period within which a petition to open a judgment must be filed to qualify as timeliness. Instead, the court must consider the length of time between discovery of the entry of the default judgment and the reason for delay.

*Castings Condominium Association v. Klein,* 444 Pa.Super. 68, 663 A.2d 220, 223 (1995) (citations omitted).

¶ 26 In the present case, default judgment was entered on January 3, 2008, and notice thereof was provided to Appellant on that same date. Appellant's petition to strike and/or open the default judgment was not filed until March 25, 2008, approximately eighty-two days later.[8] In previous decisions, the appellate courts have held that delays of less than eighty-two days between notice of the entry of the judgment and filing a petition to open were not prompt. *See Pappas v. Stefan,* 451 Pa. 354, 304 A.2d 143 (1973) (fifty-five

days); *Quatrochi v. Gaiters,* 251 Pa.Super. 115, 380 A.2d 404 (1977) (sixty-three days). In cases where the appellate courts have found a "prompt" and timely filing of the petition to open a default judgment, the period of delay has normally been less than one month. *See Duckson v. Wee Wheelers, Inc.,* 423 Pa.Super. 251, 620 A.2d 1206 (1993) (one day is timely); *Alba v. Urology Associates of Kingston,* 409 Pa.Super. 406, 598 A.2d 57 (1991) (fourteen days is timely); *Fink v. General Accident Ins. Co.,* 406 Pa.Super. 294, 594 A.2d 345 (1991) (period of five days is timely). Based on these previous decisions, we find support for the trial court's conclusion that the delay in this case does not constitute a prompt filing, and therefore, we find no abuse of discretion on this basis.

¶ 27 With regard to the second prong, "[w]hether an excuse is legitimate is not easily answered and depends upon the specific circumstances of the case." *ABG Promotions,* 834 A.2d at 616 (quotation marks and quotation omitted). The appellate courts have usually addressed the question of legitimate excuse in the context of an excuse for failure to respond to the original complaint in a timely fashion. *See McFarland, supra; ABG Promotions, supra.*

¶ 28 In the case *sub judice,* Appellant contends that she did not respond in a timely fashion because she is unsophisticated with regard to matters concerning the law. She further contends that she took all the steps necessary to protect her interest, including seeking legal counsel, seeking loss mitigation assistance, applying for a HEMAP loan, and contacting

7. Where a petition to open is filed within ten days of the entry of judgment and is accompanied by a proposed answer offering a meritorious defense, the court shall open the judgment. *See Estate of Considine v. Wachovia Bank,* 966 A.2d 1148 (Pa.Super.2009). However, in the case *sub judice,* there is no dispute that Appellant failed to file her petition to open within ten days.

8. The docket entries indicate that Appellant's petition to strike and/or open was filed on March 26, 2008; however, the cover page of the petition is time-stamped March 25, 2008.

Appellee's counsel to determine how much money she would have to pay to stop the foreclosure process. Appellant contends that she did not seek legal counsel prior to the entry of default judgment because she reasonably, although erroneously, believed that the only way she could stop the foreclosure was to make payment arrangements with the mortgage company and she did not realize that she had valid legal defenses.

¶ 29 In concluding Appellant did not provide a reasonable excuse or explanation for failing to file a responsive pleading, the trial court stated the following:

Unfortunately, in spite of numerous prompts to obtain an attorney, [Appellant] chose to ignore the complaint and failed to file an answer.

[Appellant] argues that she lacked "sophistication in legal and financial matters" and only became aware that she may have defenses to the foreclosure action after meeting with counsel in February 2008. This court, however, does not recognize ignorance of the law as a valid excuse for not filing a timely petition to open a default judgment. *See Brady Twp. v. Ashley*, 17 Pa. Cmwlth. 226, 331 A.2d 585, 588 (1975). In *Brady Twp.*, the court held that "neither ignorance nor mistake of the law with a full knowledge of the facts is *per se* a ground for equitable relief." *See id.* First, [Appellant] could have contacted counsel anytime in November or December 2007. In addition, [Appellant] does not submit any evidence that she did not know about the action in foreclosure against her or the bank's intention to obtain default judgment.

Trial Court's Order filed 6/4/08 at 2 n. 1.

¶ 30 We find no abuse of discretion in this regard. *See ABG Promotions, supra.*

We specifically note that this is not a case where the defendant was without fault, *see Stephens v. Bartholomew*, 422 Pa. 311, 220 A.2d 617 (1966) (defendant delivered complaint to his attorney in a timely fashion, but attorney neglected to read it), nor is it a case where the defendant's legal counsel has provided a reasonable excuse for his or her failure to answer the complaint in a timely manner, *see Balk v. Ford Motor Co.*, 446 Pa. 137, 285 A.2d 128 (1971) (counsel forwarded complaint to defendant's insurance company, but insurance company lost all relevant papers). *See also Flynn v. America West Airlines*, 742 A.2d 695, 699 (Pa.Super.1999) ("[W]here the failure to answer was due to an oversight, an unintentional omission to act, or a mistake of the rights and duties of the appellant, the default judgment may be opened.") ("quotation and quotation marks omitted"). Rather, this is a case where Appellant, despite numerous notices to secure counsel, simply did not do so until approximately three months after the complaint was filed and six weeks after the default judgment was entered against her.[9] The fact Appellant may be unsophisticated in legal and financial matters is all the more reason she should have heeded the notices to secure legal counsel at once, and her deliberate decision not to defend does not provide a reasonable explanation or excuse necessary to open the default judgment. *Seeger v. First Union National Bank*, 836 A.2d 163, 167 (Pa.Super.2003) ("Excusable negligence must establish an oversight rather than a deliberate decision not to defend.") (quotation marks and quotation omitted).

¶ 31 With regard to the third prong, in light of the facts and circum-

---

9. In addition, we note that, although Appellant contacted counsel on February 11, 2008, her petition to strike and/or open the default judgment was not filed until March 25, 2008.

stances presented, the trial court concluded that it was unnecessary to consider whether Appellant presented a meritorious defense. *See* Trial Court's Order filed 6/4/08 at 2 n. 1. Appellant contends that this was an abuse of discretion. Appellee, on the other hand, contends that, even if Appellant pleaded a meritorious defense, the trial court was justified in denying Appellant's petition to open since she failed to promptly file her petition to open and provided no reasonable excuse or explanation for failing to file a responsive pleading.

¶ 32 Finding support for Appellee's argument, we conclude that, even assuming Appellant pleaded a meritorious defense, the trial court properly denied Appellant's petition to open the default judgment. *See McFarland, supra* (reversing on the sole basis the trial court erred in concluding the defendant provided a justifiable explanation for failing to respond to complaint in a timely manner); *McCoy v. Public Acceptance Corp.,* 451 Pa. 495, 305 A.2d 698 (1973) (indicating all three factors must be met before default judgment may be opened and having concluded the appellant did not adequately explain the failure to answer the complaint, the trial court was justified in refusing to open the judgment); *Seeger, supra* (despite fact the trial court erred in concluding the appellant did not plead a meritorious defense, this Court affirmed the trial court's denial of the petition to open solely on the basis the appellant failed to provide a reasonable excuse or explanation for its decision not to defend).

¶ 33 For all of the foregoing reasons, we affirm.

¶ 34 Affirmed.