J-A11035-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| THE TASA GROUP, INC. | IN THE SUPERIOR COURT OF |
|---|---|
| Appellee | PENNSYLVANIA |
| v. | |
| RODERICK GRAHAM | |
| Appellant | No. 2301 EDA 2014 |

Appeal from the Order Dated July 15, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No.: 2014-10262

BEFORE:  FORD ELLIOTT, P.J.E., OLSON, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED AUGUST 21, 2015**

Roderick Graham, *pro se*, appeals the trial court's July 15, 2014 order

quashing his petition to appeal *nunc pro tunc*.  We affirm.

The trial court set forth the pertinent factual and procedural history of

this case as follows:

> TASA Group, Incorporated ["TASA"] is a Pennsylvania
> corporation that delivers expert witness referrals to attorneys
> throughout the country.  [Graham] is an attorney residing in
> Shelby County, Alabama.  In July 2009, [Graham] engaged
> [TASA] to refer an expert witness to testify in an Alabama
> federal court case.  As a result of [Graham's] contact with
> [TASA], [TASA] referred [Graham] to an expert.  Subsequent to
> the referral, [TASA] sent [Graham] a memorandum of
> confirmation detailing the agreement pertaining to the services
> rendered.  This memorandum contained a clause stating that by
> his acceptance of the expert services, [Graham] agreed to
> concurrent exclusive jurisdiction and venue of the Montgomery
> County Court of Common Pleas of Pennsylvania [("trial court")]
> and the United States District Court for the Eastern District of
> Pennsylvania with respect to the enforcement of the contract.

[TASA] filed a complaint against [Graham] alleging that [Graham] owed [TASA] a balance of $5,140.43 for its services. [TASA] mailed the complaint to [Graham] via certified mail in April 2011. [TASA] also mailed a notice of the hearing on April 4, 2011. The Montgomery County Magisterial District Court [("magisterial court")] held a hearing on May 2, 2011. [Graham] did not appear at the hearing, and immediately following the hearing, the [magisterial court] entered a default judgment against [Graham] in the amount of $5,300.30, representing the amount of the judgment as well as judgment costs. [Graham] received a copy of the default judgment on May 28, 2011. [Graham] did not file an appeal. This judgment was domesticated in the Circuit Court of Jefferson County, Alabama on October 12, 2011.

On May 6, 2014, [Graham] filed a petition to appeal *nunc pro tunc* the judgment of May 2, 2011. On May 20, 2014, [TASA] filed a motion to quash the appeal *nunc pro tunc*. On July 8, 2014, [the trial court] heard argument on the motion to quash. Subsequently on July 15, 2014, [the trial court] granted [TASA's] motion to quash the appeal *nunc pro tunc*.

Trial Court Opinion ("T.C.O."), 8/29/2014, at 1-2 (capitalization modified).

On August 5, 2014, Graham filed a notice of appeal, which was docketed in this Court at 2301 EDA 2014 on August 14, 2014. The trial court did not order Graham to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Graham did not file a concise statement. However, on August 29, 2014, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

Before this Court, Graham presents the following four issues for appeal:

1. Whether the [trial court] erred in refusing to accept [Graham's] notice of appeal based on fraud and lack of personal and subject matter jurisdiction until [Graham] file[d] a petition to appeal *nunc pro tunc*?

2. Whether [Graham] can file an appeal to the [trial court] based on fraud and lack of personal jurisdiction and subject matter jurisdiction after [thirty] days of the execution of the magisterial court's default judgment?

3. Whether [Graham] can file a petition to appeal *nunc pro tunc* based on a default judgment rendered based on a forged contract after [thirty] days of the execution of the magisterial court's default judgment?

4. Whether the [trial court] erred in granting [TASA's] motion to quash [Graham's] petition to appeal *nunc pro tunc*, where [Graham] alleges the judgment is based on a feign [*sic*] invoice, and alleges that the [trial] court lacks personal and subject matter jurisdiction?

Brief for Graham at 5 (capitalization modified; italics added). These issues are of a piece. We address them in a unitary discussion.

Our Supreme Court has characterized the purpose of *nunc pro tunc* restoration of appellate rights as follows:

Allowing an appeal *nunc pro tunc* is a recognized exception to the general rule prohibiting the extension of an appeal deadline. This Court has emphasized that the principle emerges that an appeal *nunc pro tunc* is intended as a remedy to vindicate the right to an appeal where that right has been lost due to certain extraordinary circumstances. Generally, in civil cases an appeal *nunc pro tunc* is granted only where there was fraud or a breakdown in the court's operations through a default of its officers.

***Union Elec. Corp. v. Bd. Of Prop. Assessments, Appeals & Review of Allegheny Cty.***, 746 A.2d 581, 584 (Pa. 2000) (citations and internal quotation marks omitted).

Our standard of review over an order denying *nunc pro tunc* restoration of a petitioner's appellate rights is deferent:

The denial of an appeal *nunc pro tunc* is within the discretion of the trial court, and we will only reverse for an abuse of that discretion. ***Freeman v. Bonner***, 761 A.2d 1193, 1194 (Pa. Super. 2000). In addition to the occurrence of "fraud or breakdown in the court's operations," *nunc pro tunc* relief may also be granted where the appellant demonstrates that "(1) [his] notice of appeal was filed late as a result of non[-]negligent circumstances, either as they relate to the appellant or the appellant's counsel; (2) [he] filed the notice of appeal shortly after the expiration date; and (3) the appellee was not prejudiced by the delay." ***Criss v. Wise***, 781 A.2d 1156, 1159 (Pa. 2001).

***Rothstein v. Polysciences, Inc.***, 853 A.2d 1072, 1075 (Pa. Super. 2004) (citations modified; brackets in the original).[1] "An abuse of discretion occurs when a trial court, in reaching its conclusions, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or the result of partiality, prejudice, or ill will." ***U.S. Bank N.A. v. Mallory***, 982 A.2d 986, 994 (Pa. Super. 2009).

In the present matter, TASA filed a complaint against Graham in April 2011. TASA also mailed Graham a notice of the hearing on April 2, 2011. The magisterial court subsequently held a hearing on May 2, 2011, and entered a judgment against Graham in the amount of $5,300.30. Graham acknowledged having received notice of that hearing; however, he failed to appear at the hearing. Notes of Testimony ("N.T."), 7/8/2014 at 3-4.

---

[1] Graham narrows his argument to an alleged existence of fraud or breakdown in the court's operation. Graham makes no argument with regard to the three-part test set forth by the **Criss** Court. **See Criss**, 781 A.2d at 1159.

Graham also acknowledged that he received notice of the judgment on May 28, 2011. *Id.*[2]

Pa.R.C.P.M.D.J. 1002 provides:

A. A party aggrieved by a judgment for money . . . may appeal therefore within thirty (30) days after the date of the entry of the judgment by filing with the Prothonotary of the court of common pleas a notice of appeal on a form which shall be prescribed by the State Court Administrator together with a copy of the Notice of Judgment issued by the magisterial district judge. The Prothonotary shall not accept an appeal from an aggrieved party which is presented for filing more than thirty (30) days after the date of entry of the judgment without leave of court and upon good cause shown.

Pa.R.C.P.M.D.J. 1002(A). The magisterial court entered a judgment against Graham on May 2, 2011, thus, Graham had until June 1, 2011, to file an appeal. Admittedly, Graham did not file an appeal before June 1, 2011. Rather, Graham filed his petition to appeal *nunc pro tunc* with the trial court on May 6, 2014—nearly three years past the June 1, 2011 deadline.

As previously mentioned, a trial court may grant an appeal *nunc pro tunc* when a delay in filing is cause by extraordinary circumstances involving fraud or some breakdown in the court's operations through a default of its officer. *Fischer v. UPMC Nw.*, 34 A.3d 115, 120 (Pa. Super. 2011).

---

[2] In addition to the testimony in this case, in a separate but related lawsuit, Graham filed a complaint against TASA in the United States District Court for the Northern District of Alabama on April 22, 2013. In his complaint, Graham also acknowledges that he received notice of the judgment against him on May 28, 2011. Complaint for Graham, 4/22/2013 at 1.

Graham's sole argument alleging a breakdown in the court's operations is that TASA did not provide the magisterial court with his complete address, and, as a result, Graham claims that he did not receive timely notice of the magisterial court's judgment within the thirty-day statutory period. Brief for Graham at 14. Hence, Graham's claims that there was a breakdown in the court's operations. However, his claim finds no factual support in the record. To the contrary, Graham twice admitted that he received timely notice of both the underlying lawsuit against him and the resulting judgment. Consequently, Graham has failed to demonstrate that there was a breakdown in the court's operations.

Additionally, Graham claims that TASA "committed fraud by creating the false and/or forged invoice/agreement to get a judgment and collect bogus expert witnesses' expenses." *Id.* at 17. Graham's claims, however, are in no way directly or indirectly related to his failure to make a timely appeal. Clearly, there is no connection between Graham's claims of fraud on behalf of TASA and his failure to make a timely appeal. *See Fischer*, 34 A.3d at 120 (granting an appeal *nunc pro tunc* when the appellant's delay in filing an appeal is the result of fraud or some breakdown in the court's operations).

In a final effort to relitigate the substantive claims of this lawsuit, Graham raises general challenges to the magisterial court's subject matter and personal jurisdiction. Brief for Graham at 18-32. Specifically, Graham argues that he never received a Memorandum of Confirmation, thus,

Graham claims that he is not subject to the forum selection clause contained within the Memorandum of Confirmation. *Id* at 16.

The above-mentioned Memorandum of Confirmation contained the following clause:

> **Consent To Jurisdiction And Venue**
>
> You consent to the concurrent and exclusive jurisdiction and venue of the Montgomery County Court of Common Pleas of the Commonwealth of Pennsylvania and the United States District Court for the Eastern District of Pennsylvania, with respect to the enforcement of this Memorandum, the collection of any amounts due under this Memorandum, or any disputes arising under this Memorandum.

Memorandum of Confirmation, 3/27/2009 at 2.

During the trial court hearing, however, Graham expressly admitted that he received this Memorandum of Confirmation. N.T. at 14. Graham also admitted that he paid the balance on the Memorandum of Confirmation, thereby subjecting him to the jurisdictional clause. *Id.* Consequently, Graham's claim that he was not subject to the forum selection clause contained with the Memorandum of Confirmation is meritless.

For all of the above-mentioned reasons, the trial court did not abuse its discretion in denying Graham's appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/21/2015</u>