J-A25023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| WILIMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLEY AS OWNER TRUSTEE OF THE ASPEN G3 TRUST, A DELAWARE STATUTORY TRUST | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| LANA L. BOGO AND RONDA L. BOGO | : : | |
| APPELLANTS | : | No. 180 WDA 2023 |

Appeal from the Order Entered February 7, 2023
In the Court of Common Pleas of Washington County Civil Division at
No(s):  Docket No. 2022-3180

BEFORE:   BOWES, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:        **FILED: December 27, 2023**

In this mortgage-foreclosure action, Lana and Ronda Bogo (Mother and Daughter, collectively "the Bogos"), appeal from the order declining to open the default judgments that Wilmington Savings Fund Society, FSB, ("WSFS") secured against them.  Because the Bogos waited five-and-a-half months before filing their petition to open the default judgments, we affirm.

Richard Bogo and Mother jointly owned a residence at 43 Morningside Drive in Independence Township, Washington County, for 50 years.  On March 3, 2007, they executed a deed conveying the property to themselves and their Daughter.  Four months later, without Daughter's knowledge or signature on any documents, Mr. Bogo and Mother mortgaged the property and opened a

_____

[*] Retired Senior Judge assigned to the Superior Court.

home-equity line of credit with PNC Bank. PNC assigned its rights under the mortgage to another financial institution, and those rights eventually passed to WSFS.

On April 27, 2022, WSFS filed a complaint against Mr. Bogo, Mother, and Daughter to foreclose on the property. A week later, at the property, the Sheriff of Washington County served the Bogos with copies of the complaint; the deputy handed them to Mother. *See* Affidavit of Service, 5/9/22, at 1-3. The Bogos did nothing.

On June 16, 2022, after sending the required notice of its intent to take default judgments to the Bogos, WSFS had the prothonotary enter default judgments against them. Three months later, WSFS served the Bogos with notice that it intended to present a motion to reform the mortgage, *nunc pro tunc*, by adding Daughter's name to the document. Daughter's husband called WSFS's attorney, acknowledged receipt of the motion, and said the Bogos had no interest in attempting to settle or pay the mortgage debt. On September 29, 2022, the day set for the presentation of the motion, the Bogos failed to appear. The trial court granted WSFS's uncontested motion and reformed the mortgage by adding Daughter's name.

Two days later, WSFS notified the Bogos that the sheriff would be selling their home in 30 days. The Bogos finally hired a lawyer and joined the proceedings.

On November 30, 2022, 167 days after the prothonotary entered default judgments against them, the Bogos moved to postpone the sheriff's sale.

They also moved for leave of court to respond, *nunc pro tunc*, (1) to WSFS's granted motion reforming the mortgage and (2) to the complaint. The court postponed the sheriff's sale until after the start of 2023 and scheduled an evidentiary hearing on the motion for leave to respond to WSFS's granted motion and the complaint.

At the end of December 2022, Mr. Bogo died. In lieu of an evidentiary hearing, the parties stipulated to the above facts. The parties filed briefs with the trial court. On January 13, 2023, the Bogos moved *in limine* to exclude a credit application that WSFS submitted, which bore Mr. Bogo's signature.[1] On the same day, the trial court denied the Bogos' petition to open the default judgments and motion to respond, *nunc pro tunc*, to WSFS's granted motion to reform the mortgage. *See* Trial Court Order and Opinion, 1/13/23, at 1.

First, the court treated the November 30, 2022 filings as a petition to open the default judgments. Because the Bogos had waited 167 days after the entry of default judgments to appear, the trial court ruled their delay was "unacceptable." *Id.* at 2.

Second, the court treated the Bogos' motion to respond, *nunc pro tunc*, to WSFS's granted motion to reform the mortgage as "a motion for reconsideration, *nunc pro tunc*." *Id.* at 4. The court found no "extraordinary cause which would justify vacating the . . . order to reform the mortgage." *Id.* at 5. Because Daughter knew of WSFS's intention to seek reformation,

---

[1] The Bogos contended the credit application lacked proper authentication, constituted hearsay, and violated the Dead Man's Act.

the trial court reasoned she could not establish grounds for reconsideration. Further, on the merits, it found her name was not on the mortgage with PNC Bank due to a mutual mistake. *See id.* at 5-6. Thus, the trial court concluded that the Bogos were not entitled to reconsideration of the order reforming the mortgage.

The Bogos again moved for reconsideration. After hearing oral argument on that motion, the trial court partially granted relief. The parties agreed that the trial court should strike the default judgment against the deceased Mr. Bogo; it did so and removed him as a Defendant.[2] However, the trial court denied reconsideration with respect to the default judgments entered against Mother and Daughter. They timely appealed.

The Bogos raise three issues, which we have reordered below for ease of disposition:

1. Whether the trial court committed an error of law and/or violated public policy when it applied a promptness requirement to deny a motion to open and/or strike a default judgment of a fraudulent claim and deny a motion for reconsideration of a ruling to reform a mortgage to add [Daughter] . . . because [she] had failed to file a motion to open and/or strike the default judgment until approximately five-and-half months after the default judgment had been entered . . .

2. Whether the trial court committed an error of law when it issued an order to reform a mortgage to add [Daughter] based on mutual mistake . . .

---

[2] We have amended the caption to reflect the fact that Mr. Bogo is no longer a party. No one moved to substitute the administrator of his estate for him.

> 3. Whether the trial court committed an error of law when it disregarded [the Bogos'] hearsay and Dead Man's Act objections and admitted into evidence and relied upon a photocopy of a credit application . . . .

Bogos' Brief at 7-8.

Our analysis begins and ends with the Bogos' untimely appearance to defend this lawsuit. They believe that their delay of 167 days, after the entry of default judgment against them, "is of no moment, [because] the trial court should never have entered an improper order refusing to open the fraudulent judgment or reforming the mortgage." *Id.* at 33. In their view, the trial court's decision to enforce the Rules of Civil Procedure as written and to follow the precedents of this Court applying those Rules "violate[d] public policy [and] permit[ed] an abuse of the court system." *Id.* To support this claim, the Bogos rely on Rule of Civil Procedure 126, regarding liberal construction of the Rules.[3] They believe the trial court's decision would invite fraudulent claims, including a hypothetical false claim "to sell the courthouse, or any public asset, and, if the government failed to respond, a court could enter an order authorizing the sale." *Id.* at 35.

They also attempt to invoke equity to invalidate the trial court's decision. "Equities and fairness dictate that a fraudulent claim against a non-party to

---

[3] Rule of Civil Procedure 126 provides, "The Rules shall be liberally construed to secure the just, speedy, and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties."

the underlying dispute should not be enforced." *Id.* at 39. Moreover, based on Canon 1 of the Code of Judicial Conduct,[4] they contend the trial court needed to be both their advocate and their adjudicator when WSFS presented its motion to reform the mortgage. *See id.* at 39 – 41. As explained below, we disagree.

"The decision to grant or deny a petition to open a default judgment is within the sound discretion of the trial court, and we will not overturn that decision absent a manifest abuse of discretion or error of law." *Smith v. Morrell Beer Distributors, Inc.*, 29 A.3d 23, 25 (Pa. Super. 2011). "An abuse of discretion is not a mere error of judgment, but if in reaching a conclusion, the law is overridden or misapplied; or the judgment exercised is

---

[4] Canon 1 of the Pennsylvania Code of Judicial Conduct provides:

**A JUDGE SHOULD UPHOLD THE INTEGRITY AND INDEPENDENCE OF THE JUDICIARY.**

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

The Court of Judicial Discipline has held "Canon 1 is primarily a statement of purpose and rule of construction, rather than a separate rule of conduct." *In re Cicchetti*, 697 A.2d 297, 313 (Pa. Ct. Jud. Disc. 1997). "The language of Canon 1 is hortative and goal oriented, and does not set forth with specificity the precise nature of the conduct and standards to which it is aimed." *Id.* Thus, reliance by the Bogos upon Canon 1 as a substantive basis for reversing the appealed-from order is wholly misplaced.

manifestly unreasonable; or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record, discretion is abused." *Id.*

"In general, a default judgment may be opened when the moving party establishes three requirements: (1) a prompt filing of a petition to open the default judgment; (2) a meritorious defense; and (3) a reasonable excuse or explanation for its failure to file a responsive pleading." *Smith*, 29 A.3d at 25. Additionally, "the trial court cannot open a default judgment based on the 'equities' of the case when the defendant has failed to establish **all three** of the required criteria." *Myers v. Wells Fargo Bank, N.A.*, 986 A.2d 171, 176 (Pa. Super. 2009) (emphasis added). Hence, the court may dismiss a petition to open a default judgment based on one or more of the criteria.

Here, the trial court denied relief based upon the first criteria – *i.e.*, that the Bogos failed to file their petition to open the default judgment promptly. The promptness requirement stems from the fact that the party seeking to open a default judgment appeals to the equitable power of the court. Under the ancient maxim, "equity aids the vigilant, not those who slumber upon their rights." *Riley v. Boynton Coal Co.*, 157 A. 794, 795 (Pa. 1931).

Equity's window for lending aid closes quickly when parties seek to open judgments after defaulting under the Rules of Civil Procedure. "The timeliness of a petition to open a judgment is measured from the date that notice of the entry of the default judgment is received." *Myers*, 986 A.2d at 176. While there is no "specific time period within which a petition to open a judgment must be filed to qualify as [timely] . . . the [trial] court must consider the

length of time between discovery of the entry of the default judgment and the reason for delay." *Id.* "In cases where the appellate courts have found a 'prompt' and timely filing of the petition to open a default judgment, the period of delay has normally been less than one month." *Id.*

Indeed, as the trial court said, our precedents are "clear regarding what should be deemed a prompt request to open a default judgment . . . ." Trial Court Order and Opinion, 1/13/23, at 2. Relying on *US Bank N.A. v. Mallory*, 982 A.2d 986, 995 (Pa. Super. 2009), the trial court observed that delays 55 days, 63 days, and 82 days were *not prompt* for equitable purposes. *Id.* (quoting *US Bank N.A.* and decisions cited therein).

Here, the Bogos delayed far longer than any case upon which the trial court relied. They waited 167 days after the entry of the default judgments to appear and to petition to open those judgments. "Based on these previous decisions, we find support for the trial court's conclusion that the delay in this case does not constitute a prompt filing, and therefore, we find no abuse of discretion on this basis." *US Bank N.A.*, 982 A.2d at 995.

In addition, we are not persuaded by the parade-of-horribles that the Bogos present in their brief concerning the hypothetical sale of public property. This Court rests assured that the county solicitors or the Attorney General would timely file a responsive pleading to any complaint seeking to sell the courthouse out from under the public. Unlike the Bogos, we doubt that the government would sleep on its rights, but that issue is not before us.

Quite simply, there is no miscarriage of justice where, as here, both WSFS and the trial court diligently followed and applied the Rules of Civil Procedure. WSFS filed a real complaint, in a real trial court, and a real deputy sheriff served Mother with the complaint. Furthermore, the Bogos receive a real notice of a real motion to reform the mortgage. Their inexplicable decision to ignore those realities cannot save them from the real consequences of their neglect. They disregarded the process of the trial court for months without any remotely viable excuse; equity will not intervene for them. *See Riley*, *supra*. [5]

Finally, with respect to the motion to reform the mortgage, in our adversarial system, the trial court had no obligation to function as stand-in-defense counsel for the Bogos, who failed to appear before it. Doing so would have violated the court's primary role as a fair, unbiased arbiter between the parties, as well as obvious principles of judicial restraint. Indeed, on appeals, this Court has repeatedly explained that it "will not act as counsel and will not develop arguments on behalf of an appellant." *Coulter v. Ramsden*, 94 A.3d

---

[5] The Bogos urge us to create an exception to the allow a default judgment to be opened well after thirty days, when the underlying complaint alleges a fraudulent claim. Here, they claim that Ronda Bogo was not a party to the mortgage at the time the foreclosure action was filed, and the default judgment was taken. Therefore, they believe they should have an unlimited time to challenge the lawsuit against her. They cite no precedent for this novel exception and, as an intermediate appellate court, we lack the authority to create one. As the law presently exists, the Bogos cannot excuse their failure to timely respond to the legal documents with which they were properly served. Although they may have had a merit-based reason to open the judgment, if they had acted promptly, the law does not allow them to wait an inordinately long time to file a petition to open the judgment.

1080, 1088 (Pa. Super. 2014). "When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof." ***Commonwealth v. Tchirkow***, 160 A.3d 798, 804 (Pa. Super. 2017). Instead, we dismiss unraised or underdeveloped issues as waived. ***See id.***

We know of no rule that would compel a court of common pleas to act otherwise when deciding motions presented to it. The trial judge was not required to serve as defense counsel for the Bogos when they failed to appear, and they cite no rule or case to indicate that the trial court had such an obligation. When the Bogos did not appear to contest WSFS's motion to reform the mortgage, the trial court reasonably and properly dismissed any objections they may have had to the motion as waived, and granted the relief requested by WSFS.

In sum, because we find the trial court did not abuse its discretion by refusing to open the default judgments against the Bogos, those default judgments are final. We dismiss the Bogos' remaining appellate issues as moot.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/27/2023