424 A.2d 1250

Albert A. KENNEDY, Sr. and Ann G. Kennedy, trading and doing business as Bennington Company, Appellants,

v.

Frank L. BLACK, Jr., Inc., United States Fidelity and Guaranty Co., and Carroll Township Authority.

Supreme Court of Pennsylvania.

Argued Sept. 30, 1980.

Decided Jan. 30, 1981.

Gary N. Altman, Hirsch, Weise & Tillman, Herbert Grigsby, Pittsburgh, for appellants.

Richard B. Tucker, III, Jeffrey J. Leech, Tucker, Arensberg, Very & Ferguson, Pittsburgh, for appellees.

David Fawcett, Pittsburgh, for amicus.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

O'BRIEN, Chief Justice.

This appeal is from an order of the Superior Court, affirming an order of the Court of Common Pleas of Washington county, which granted a petition by appellees, Frank L. Black, Jr., Inc. and United States Fidelity and Guaranty Company, to open a default judgment entered by appellants, Albert A. Kennedy, Sr. and Ann G. Kennedy, trading and doing business as Bennington Company.

Black was the general contractor for the construction of sewage pumping stations in Carroll Township, Washington County. In August, 1975, Black subcontracted with Kennedy for certain excavation work required for the project. Following a dispute between Kennedy and Black, Kennedy abandoned the job site in May, 1976. On April 28, 1977, Kennedy filed an action in assumpsit against Black, Fidelity, the bonding company for Black and the Carroll Township Authority.[1]

On May 16, 1977, counsel for Kennedy contacted the attorney for Black and Fidelity and granted the latter a

1. The Carroll Township Authority is not a party to the instant appeal.

thirty-day extension to file an answer or other responsive pleading. When no answer was filed, Kennedy's attorney wrote to counsel for Black and Fidelity, requesting action. On August 2, 1977, the attorney for Black and Fidelity notified opposing counsel that he had not yet had a conference with his clients, but was planning such a meeting in the near future.

On October 4, 1977, Kennedy's attorney telephoned appellees' counsel and asked when responsive pleadings would be filed. Appellees' counsel said he had talked with his clients but was somewhat unsure about their position. On October 26, 1977, Kennedy's counsel, having not heard from appellees, again wrote and requested that some action be taken. Nothing was done and on November 22, 1977, Kennedy's attorney wrote to appellees' counsel and gave the following ultimatum:

"If you do not take any action on the above case within twenty days of the date of this letter, I will be forced to enter a default judgment."

On December 2, 1977, appellees' attorney telephoned Kennedy's attorney and requested an extension until January 1, 1978. The request was granted.

On January 18, 1978, Kennedy's counsel again telephoned to inquire about the case. Appellees' attorney informed opposing counsel that he would send a letter outlining a counterclaim as a prelude to possible settlement discussions. On February 17, 1978, appellees' attorney mailed the letter, in which he mentioned that appellees intended to file a counterclaim of at least $331,100 if Kennedy did not drop its lawsuit. Kennedy's counsel, by letter dated March 1, 1978, informed appellees' attorney that if appellees would pay debts that Kennedy had incurred for supplies used on the job, and if appellees would forego their counterclaim, Kennedy would drop his suit.

Kennedy's attorney tried unsuccessfully to contact appellees' attorney in March, 1978. After talking to appellees' attorney on April 18, 1978, Kennedy's counsel sent a letter to

appellees' attorney informing him that if an answer was not filed by May 9, 1978, a default judgment would be taken.

On May 8, 1978, appellees' attorney requested an extension for "10 days or so." The request was granted. On May 23, 1978, Kennedy's counsel took a default judgment for $80,141.33 because no answer had been filed as of that date.

On May 31, 1978, appellees filed a petition to open the judgment with a *proposed* answer and counterclaim attached. The affidavit, however, was not signed. On July 20, 1978, the answer and counterclaim was filed, with the attached affidavit signed and dated June 5, 1978.

A hearing on the petition to open the judgment was held on June 26, 1978. On July 6, 1978, the court ordered the judgment opened and permitted appellees to file their answer. Kennedy appealed to the Superior court and that court, sitting as a panel of three, affirmed the trial court with one judge dissenting. *Kennedy v. Frank L. Black, Jr., Inc.*, 271 Pa.Super. 454, 413 A.2d 1104 (1979). We granted Kennedy's petition for allowance of appeal and this appeal followed.

■ Appellant argues the trial court abused its discretion in opening the instant default judgment. In *McCoy v. Public Acceptance Corp.*, 451 Pa. 495, 305 A.2d 698 (1973), we reiterated the well-established principle that a petition to open a default judgment is within the sound discretion of the trial court; further, a reviewing court will not reverse a trial court's decision on the matter unless there was an error of law or a manifest abuse of discretion. Before a court may open a default judgment, however, the moving party must show that the petition to open was filed promptly, that a meritorious defense existed, and that the failure to act could be reasonably explained. *Ruczynski v. Jesray Construction Corp.*, 457 Pa. 510, 326 A.2d 326 (1974). As we believe the appellees' excuses for its failure to respond are not sufficient as a matter of law, we must reverse the Superior Court's order which affirmed the trial court's order opening the instant default judgment.

At the hearing on the petition to open the judgment, appellees advanced the following three excuses for not filing responsive pleadings: (1) appellees' attorney was confused as to the length of the final extension; (2) Kennedy's counsel failed to follow a local Washington County custom and did not telephone opposing counsel immediately before entering the default judgment; and (3) appellees' attorney believed that Kennedy's counsel would never take a default judgment.

The trial court based its decision on the premise that the delay was excusable because the parties were attempting to negotiate a settlement. The court also stated that Kennedy's attorney failed to notify opposing counsel immediately before taking the default judgment. The majority of the Superior Court panel agreed with the trial court on the discussion concerning settlement negotiations and further held that appellees' counsel may very well have misunderstood the length of the final extension. For the reasons set forth hereafter, we do not believe that the reasons either advanced by appellees or accepted by the trial and Superior Courts constitute reasonable excuses for appellees' failure to file an answer which justifies the opening of the judgment.

The Rules of Civil Procedure clearly provide:

"Every pleading subsequent to the complaint shall be filed within twenty (20) days after service of the preceding pleading.... Pa.R.C.P. 1026."

Further:

"The prothonotary, on praecipe of the plaintiff, shall enter judgment against the defendant for failure to file within the required time an answer to a complaint.... Pa.R.C.P. 1037(b)."

Yet, appellees failed to file an answer for thirteen months after the original complaint was filed.

While settlements are clearly favored and default judgments are not, we do not believe the attempts in this case to negotiate a settlement can justify appellees' protracted delay in the filing of an answer. When a party

chooses to wait thirteen months to file an answer in the face of repeated requests by opposing counsel to do so, a default judgment may properly be entered.

■ We likewise find no merit to the argument that appellees' counsel had misunderstood the length of the final extension of time, and further had believed Kennedy would never take a default judgment. While it is true that "errors of counsel . . . which indicate an oversight rather than a deliberate decision not to defend, have been held to constitute sufficient legal justification to open a default judgment," *Johnson v. Yellow Cab Co.*, 226 Pa.Super. 270, 272, 307 A.2d 423, 424 (1973), appellees can find no refuge in the above-quoted standard. In *McDonald v. Allen*, 416 Pa. 397, 400, 206 A.2d 395, 396 (1965), we stated:

> ". . . The Superior Court well stated this kind of a situation in *Derbyshire Bros. v. McManamy,* 101 Pa.Super. 514: 'Whatever return indulgence he had earned by his extension of time to defendants' counsel had long since been exhausted and the debt was by this time all the other way. In the face of the peremptory demands of September 17th and October 2d, he had no right to rely on the defendants' counsel's further indulgence and forebearance. As was well said by Judge Henderson, speaking for this court in *Logan's Est.,* 74 Pa.Super. 82, 86, "The exercise of generosity does not create a binding obligation for its continuance." There comes a time when in the interests of justice and his client's cause further forbearance may properly be refused by an attorney if satisfied that his courtesy is being taken advantage of for purposes of procrastination and delay, and we agree with counsel for appellants that that time had come in this case. No valid excuse for such long continued delay in the face of repeated requests and demands for action was shown and we are of opinion that the judgment should not have been opened. See *Hale v. Uhl,* 293 Pa. 454 [143 A. 115].' "

As *McDonald* is on all fours with the instant case, we believe it is dispositive of the arguments advanced by appellees. As

Judge Hester stated in his dissenting opinion in the Superior Court:

> "The record in the instant matter discloses numerous occasions where appellants' counsel requested a responsive pleading and/or action on the part of appellees' counsel. In view of the clear and concise letter of April 19, 1978, and the prior thirteen month delay. [sic] I fail to see how appellees' counsel could misunderstand, or expect a blanket further extension of time. The letter and the prior correspondence of the parties indicates appellants' desire to proceed in a diligent fashion on April 19, 1978 was entirely reasonable. Rather than supporting appellees' contention that the failure to file the responsive pleading was due to a misunderstanding or mistake of counsel, the record supports the conclusion that appellees' counsel flagrantly abused the numerous extensions courteously granted by opposing counsel." *Kennedy v. Frank L. Black, Jr., Inc., supra,* 271 Pa.Super. at 465–466, 413 A.2d at 1110.

■ Finally, appellees argue that the judgment was properly opened because of the failure of Kennedy's attorney to follow the Washington County custom of notifying opposing counsel *immediately* prior to taking the default judgment. Suffice it to say that no such requirement exists in either our rules or case law.[2] In *Brooks v. Surman Dental Lab., Inc.,* 262 Pa.Super. 369, 374, 396 A.2d 799, 802 (1979), the court stated:

> "Although the Rules of Civil Procedure do not contain a notice requirement, we have repeatedly chastized counsel for failure to afford that courtesy."

Instantly, appellees were informed a number of times about Kennedy's intent to take a default judgment if an answer was not filed. Appellees thus have no grounds to complain.

Order of Superior Court affirming the order of the Court of Common Pleas of Washington County is reversed and the judgment entered by default is reinstated.

2. But see Pa.R.C.P. 237.1, effective February 1, 1980.