443 A.2d 353

Charles PENNEYS, Appellant,

v.

**RICHARD KASTNER CO., INC. and Automotive Merchandisers of Texas, Inc. and Ambassador Factors Corporation.**

Superior Court of Pennsylvania.

Argued Nov. 5, 1981.

Filed March 19, 1982.

Petition for Allowance of Appeal Denied Aug. 30, 1982.

Joseph S. U. Bodoff, Philadelphia, for appellant.

James W. Adelman, Philadelphia, for appellees.

Before BROSKY, POPOVICH and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The instant appeal by the Plaintiff-Appellant arises from a lower court order granting a petition to open a default judgment filed by the Defendant-Appellee, Automotive Merchandisers of Texas, Inc. The lower court considered the petition, an answer filed by the Appellant, and argument by the parties. We have thoroughly reviewed the entire record and the issues raised, and conclude that the lower court committed no error in opening the judgment.

In our review of this appeal, we are guided by several well-established principles. We have said that a petition to open judgment is a matter of judicial discretion. It is an appeal to the court's equitable powers, and is to be exercised only when three factors coalesce: (1) the petition has been promptly filed; (2) a meritorious defense can be shown; and (3) default can be excused. See *Quaker Transit Co. v. Jack W. Blumenfeld and Co.*, 277 Pa. Superior Ct. 393, 419 A.2d 1202 (1980). Moreover, the grant or denial of a petition to open judgment is a matter within the sound discretion of the trial court, and will not be reversed in the absence of a manifest abuse of that discretion. *Cruse v. Woods*, 279 Pa. Superior Ct. 242, 420 A.2d 1123 (1980).

The record shows that the Appellant filed suit on May 2, 1975 seeking an accounting as well as the distribution of profits from a joint venture in which the three named Defendants had been involved. The Appellant alleged that the Defendant Richard Kastner Co., Inc. had assigned to him

a fifty percent interest in the anticipated share of the joint venture profits which would have been due to Kastner. It was alleged by the Appellant that after that assignment, all of the Defendants, with knowledge of the assignment, entered into an agreement intended to defeat the Appellant's claim to the profits. The Defendant Richard Kastner Co., Inc. had retained Attorney I. David Pincus, of Philadelphia, to represent it in the action. After receiving notice of the action, the general counsel for the Appellee Automotive Merchandisers of Texas, Inc. (hereinafter referred to as "Automotive"), also retained Attorney Pincus to represent the interest of his company in the action. More particularly, Automotive's general counsel transmitted letters to Pincus, dated May 22 and September 21, 1979, authorizing Pincus to file an answer on behalf of Automotive. Shortly after he was retained by Automotive, Pincus notified its general counsel that the Plaintiff-Appellant and the Defendant Kastner were attempting to work out a settlement, so that the filing of an answer was then unnecessary as the suit had been put on "hold" by the parties. Settlement efforts between the Plaintiff and Kastner apparently proceeded poorly, for in late September, 1979, Pincus received a letter from Plaintiff's counsel, which stated that ". . . in the event a responsive pleading is not made to the Complaint on or before October 7, 1979, I shall take judgment against your clients on October 7, 1979." However, judgment was not taken by the Plaintiff-Appellant against either Automotive or Kastner on October 7, 1979, despite the fact that neither Defendant filed any responsive pleading. Settlement discussions apparently continued as did extensions of the date when responsive pleadings were expected. However, such discussions were apparently not fruitful, and counsel for the Plaintiff sent a letter to the office of Attorney Pincus, dated January 24, 1980, which demanded that an answer be filed on or before February 13, 1980, or ". . . we will take judgment against your clients by default." On February 8, 1980, Attorney Pincus advised the general counsel for Automotive that settlement discussions had broken down. Further, Pincus advised that he was withdrawing as counsel for

Automotive, to avoid a conflict between its interests and those of Kastner. By letter dated February 7, 1980, an associate of Pincus notified counsel for the Appellant of the filing of a notice of the withdrawal of the appearance on behalf of Automotive. Automotive, through its general counsel, whose office was in Boston, Massachusetts, immediately took steps to employ another Philadelphia attorney to represent its interest in litigation. However, on February 25, 1980, with no further communication as to any specific date when he would do so, the Plaintiff-Appellant entered a judgment by default against Automotive.

Automotive filed its petition to open judgment thirty-three (33) days after the default judgment had been taken. The lower court concluded that Automotive, in that regard, had acted promptly.[1] In support of its finding that the petition to open had been promptly filed, the lower court pointed out that Automotive had acted immediately to retain other local counsel after the apparent sudden breakdown in settlement negotiations and contemporaneous withdrawal as counsel by Attorney Pincus. These circumstances, as well as the fact that the Plaintiff-Appellant had taken judgment without any notice as to a specific date, other than the one it had given five months earlier in September, 1979, convinced the lower court that Automotive had fulfilled the requirements of promptness in filing its petition to open. We must agree.

The lower court also found that Automotive had averred in its petition that it had a meritorious defense to the Appellant's claim. Briefly stated, Automotive claimed that in 1978 the three Defendants had entered into an agreement reflecting certain prior transactions of Kastner and Automotive. Kastner had granted Automotive a right of set-off, in the event of default under the 1978 agreement, of any deficiencies from Kastner's share of the profits from the joint venture agreement which had been reached in 1977. Automotive alleged that a default did occur and that it

---

1. The lower court filed an excellent and comprehensive opinion in this case explaining the rationale for its decision.

thereby set off sums necessary to cure the default, from the profits due Kastner in the joint venture. Further, Automotive claimed that these and subsequent transactions, all concerning Kastner's obligation to Automotive, occurred prior to and/or without any knowledge on the part of Automotive of any assignment from Kastner to the Plaintiff-Appellant. The lower court reviewed all of these averments and various agreements attached to. Automotive's petition to open, and concluded that the Defendant-Appellee had presented sufficient evidence of the existence of a meritorious defense to warrant the opening of the default judgment. Our own examination of the record regarding all of these matters leads us to the firm conclusion that the lower court did not abuse its broad discretion, as there was a substantial basis to support the conclusion that Automotive offered a meritorious defense sufficient to justify the opening of the default judgment.

The lower court also found that the Appellee Automotive adequately explained its default in filing a timely answer of other responsive pleading. In that regard, the lower court found that the Appellee's failure was excused by the circumstances of protracted settlement negotiations and the Plaintiff-Appellant's failure to properly notify Automotive of the intention to enter default judgment. As to the latter finding, the lower court relied upon the provisions of Pa.R.C.P. 237.1, which was promulgated December 14, 1979, to be effective February 1, 1980, and applicable to all actions then pending. That Rule, in pertinent part, provides:

No judgment by default shall be entered by the prothonotary unless the praecipe for entry includes a certification that a written notice of intention to file the praecipe was mailed or delivered to the party against whom judgment is to be entered and to his attorney of record, if any, after the default occurred and at least ten days prior to the date of the filing of the praecipe. If a written agreement for an extension of time specifies a time within which the required action must be taken and a default occurs thereafter, judgment by default may be entered by

the prothonotary without prior notice under this rule. A copy of the notice or agreement shall be attached to the praecipe.

The lower court pointed out that the certification which accompanied the praecipe to enter judgment contained a statement by the Plaintiff that on May 15, 1979, its attorney and Attorney Pincus entered into a written agreement that no action would be taken in this case without ten (10) days prior notice. The Plaintiff then described the letter of late September, 1979, which threatened that judgment would be taken on October 7, 1979, and also stated that: "Additional notices threatening to take default judgment . . ." had subsequently been sent. The Plaintiff apparently concluded that such notices complied with the provisions of a written agreement for an extension of time for filing a responsive pleading, and therefore considered additional prior notice to Automotive unnecessary. The lower court found that the Plaintiff-Appellant failed to properly comply with the requirements of Rule 237.1, and we must agree. A written agreement for extension of time within which to file a responsive pleading should specify a time within which the action must be taken, according to the Rule. In this case, the parties agreed to a ten (10) day notice prior to either party taking any action against the other. While the Appellant sought to rely upon its letter of late September, 1979 as setting a date certain, October 7, 1979, the Appellant's subsequent actions mandate the conclusion that it later rejected that position. It is not contested that the Appellant sent the Appellees subsequent notices extending the time for compliance, and also did not take judgment on February 13, 1980, as threatened. These circumstances and the five month delay in the entry of the default judgment led the lower court to conclude that the parties' written agreement for extension of time was uncertain as to date of compliance. Thus, the court found that the Appellant remained under an obligation to give Automotive ten (10) days written notice of the intent to enter judgment on February 25, 1980. This failure by the Appellant to comply with Rule 237.1, as well

as the protracted status of settlement negotiations, led the lower court to conclude that Automotive's failure to file a responsive pleading could be excused. Again, we can discern no abuse of discretion by the lower court in reaching that conclusion.

For all of the above reasons, it is clear to us that the lower court had committed no abuse of discretion in this case, and we must sustain the order of the lower court opening the default judgment.

Affirmed.

BROSKY, J., files a dissenting opinion.

BROSKY, Judge, dissenting:

The majority holds that the court below properly granted defendant-appellee's petition to open the default judgment entered against it. I disagree.

Appellee AMT argued that its default in filing an answer was excused because of the fact that settlement negotiations were taking place at the time, and also because of appellant's failure to notify appellee, immediately prior to entry of the default judgment, of his intention to enter said judgment. The court below found, and the majority agrees, that appellant failed to comply with Pa.R.C.P. 237.1 in that appellant was, in this instance, under an obligation to give appellee AMT ten days written notice of appellant's intent to enter judgment on February 25, 1980. Accordingly, the court below held that "As plaintiff [appellant] failed to comply with Pa.R.C.P. 237.1, and in light of the protracted settlement negotiations . . . AMT's failure to file a responsive pleading could be excused."

The record shows that the initial complaint in this case was filed May 2, 1979. Appellee AMT was served May 9, 1979. On June 12, 1979, an appearance was entered by the law firm of Sidkoff, Pincus, Greenberg and Green on behalf of both Kastner and AMT. Attorney Pincus was specifically retained by AMT's general counsel in Boston to represent AMT. By letters of May 22 and September 21, 1979, AMT's

general counsel authorized Pincus to file an answer on behalf of AMT. No answer was filed, however. It appears that during this time, the parties were attempting to work out a settlement.

The record shows that on May 15, 1979, an agreement was entered into between Attorney Pincus and Attorney Reich, appellant's attorney, which was contained in a letter from Pincus to Reich, stating in part:

This will confirm our telephone conversation of today, at which time, it was agreed . . . that you will take no action in the suit without giving to me at least ten (10) days notice prior to the taking of any such action.

By September, 1979, however, Pincus received a letter from appellant's counsel warning that "in the event a responsive pleading is not made to the complaint on or before October 6, 1979, I shall take judgment against your clients on October 7, 1979." On January 24, 1980, another letter was sent to appellee demanding that an answer be filed on or before February 13, 1980. No answer was filed. On February 8, 1980, Pincus advised AMT's general counsel, Crosson, that the arrangement between the parties had broken down, and that Pincus was withdrawing as AMT's counsel to avoid a conflict of interest between Kastner and AMT. On February 8, 1980, Sidkoff, Pincus, Greenberg and Green withdrew its appearance for AMT.[1] Crosson then took steps to obtain other Philadelphia counsel for AMT. On February 25, 1980, appellant took judgment by default against AMT for failure to file a responsive pleading.

In *Watts v. Jenkins*, 226 Pa.Super. 469, 313 A.2d 775 (1973), the parties were engaged in settlement negotiations which proved fruitless by November 4, 1970. In December, 1970, appellee's attorney sent certified letters to appellants notifying them that he intended to proceed to judgment. No answer was filed, and judgment by default was taken February 3, 1971. Appellants argued that their default

---

1. Although counsel withdrew, it is clear that AMT had alread received ample notice, before the date of withdrawal, of appellant's intent to take judgment.

could be excused on the ground that they were led to believe that no legal action would be taken while settlement negotiations were being conducted. In holding that appellants had not offered an excuse for their default, we stated:

> [I]t is indisputable that after negotiations had broken down, the appellants were warned of appellee's intention to proceed to judgment, and of the necessity of appellant's securing counsel to protect their interests. This is clearly not a case in which appellee's counsel lulled the appellants into a false sense of security by promises of inaction. Appellant's failure to answer can only be attributed to a lack of diligence.

Id., 226 Pa.Superior Ct. at 470–471, 313 A.2d at 776.

Similarly, in *Kennedy v. Black*, 492 Pa. 397, 424 A.2d 1250 (1981), our Supreme Court held that the default could not be excused on the grounds that the parties were engaged in settlement negotiations. In *Kennedy*, appellee was given several chances to respond, and several extensions of time were granted. Appellant finally sent a letter stating that if no action was taken within twenty days, he would be forced to enter a default judgment. The Supreme Court held that "[w]hile settlements are clearly favored and default judgments are not, we do not believe the attempts in this case to negotiate a settlement can justify appellees' protracted delay in the filing of an answer." Id., 492 Pa. at 402, 424 A.2d at 1252.

Here, the parties were attempting to negotiate a settlement, but negotiations broke down by September, 1979, at which time it became clear to appellee that appellant intended to enter a default judgment if no responsive pleading was filed. In January, 1980, appellee was again warned that appellant intended to enter judgment by default against it if no answer was filed. In effect, appellee had from May, 1979, the time when it first received the complaint, to February, 1980 to file an answer, a period of eight months. Ample notice was given appellee of appellant's intention to enter judgment. For these reasons, I would hold that appellee's failure to appear cannot be excused here.

The majority also holds that appellant had failed to comply with Pa.R.C.P. 237.1. Pa.R.C.P. 237.1 requires that ten days' notice be given prior to the filing of a praecipe for entry of default judgment. The rule also states that if a written agreement for an extension of time specifies a time within which the responsive pleading must be filed, and default occurs thereafter, then judgment may be entered without prior notice. The court below found that appellant's letter of September 28, 1979, was uncertain with respect to fixing a date of compliance, on the ground that subsequent notices were sent after the September 28 letter and judgment was not entered until five months later. I must disagree with the court's conclusion that appellant remained under an obligation to give appellee ten days' written notice of his intent to enter judgment February 25, 1980.

To begin with, the September 28, 1979 letter set a specific date of compliance—October 6, 1979. Appellant's January 24, 1980 letter also set a specific date of compliance—February 13, 1980. Default judgment was not taken until February 25, 1980, twelve days later. As a courtesy, appellant gave appellee an additional twenty days by its letter of January 24, 1980, to file an answer. The fact that appellant gave appellee several opportunities to file an answer should not be used to penalize appellant.

Pa.R.C.P. 237.1 evolved from the need to regulate the conduct of attorneys who "[a]ttempt(ed) to utilize every niggling procedural point for maximum advantage." *Silverman v. Polis*, 230 Pa.Super. 366, 371, 326 A.2d 452, 455 (1974). Here, the lower court urges an application of the rule which yields the opposite result—namely, penalizing a plaintiff-creditor for being courteous by granting extensions of time. It certainly cannot be said here that appellant took a "snap" judgment, in the true sense of that term, given the length of time between the filing of the complaint and the entry of judgment by default. Accordingly, I would hold that appellant complied with both the letter and spirit of Pa.R.C.P. 237.1.

For these reasons, I must dissent.