J-A19013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TIMOTHY H. JONES D/B/A JONES 401(K) PLAN, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| INNOVATIVE PROPERTY GROUP, LLC, | |
| Appellant | No. 398 EDA 2017 |

Appeal from the Order Entered December 23, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): May Term, 2016 No. 2828

BEFORE:  BENDER, P.J.E., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:　　　　　**FILED OCTOBER 26, 2017**

Appellant, Innovative Property Group, LLC (referred to herein as "IPG"), appeals from the trial court's December 23, 2016 order, denying its petition to open default judgment.[1]  We affirm.

We summarize the factual background and procedural history of this case as follows.  On May 23, 2016, Appellee, Timothy H. Jones d/b/a Jones 401(k) Plan, LLC (referred to herein as "Jones"), filed a complaint against IPG, setting forth claims for breach of contract, unjust enrichment, and promissory estoppel.  **See** Complaint, 5/23/2016, at 1.  In the complaint,

---

[1] Although IPG entitled its petition as "[IPG's] Motion to Open Default Judgment," we will refer to it herein as a petition and not a motion.  **See** IPG's Motion to Open Default Judgment, 11/29/2016, at 1 (unnecessary capitalization omitted; hereinafter referred to as "Petition").

Jones alleged that IPG failed to pay him $205,000.00 in principal and $23,016.16 in interest pursuant to a promissory note executed by IPG in connection with a property redevelopment project. *See id.* at ¶¶ 6, 19. On June 28, 2016, Jones filed an Affidavit of Service, stating that the complaint "was served via hand delivery by Isaac Finkelstein on May 24, 2016, at [IPG's] office located at 1515 Market Street, Suite 1200, Philadelphia, PA 19103." *See* Affidavit of Service, 6/28/2016, at 1. In a service affidavit attached thereto, Isaac Finkelstein affirmed that on May 24, 2016, he served the complaint by hand delivery at the above address upon Robin Martinez, who represented herself to be an agent or person in charge at the office or usual place of business of IPG. *See* Affidavit of Service, 6/28/2016, at Exhibit A ("Finkelstein Aff.").

Subsequently, on June 28, 2016, Jones filed a praecipe to enter default judgment in his favor and against IPG in the amount of $228,016.16. Therein, Jones averred that he served a notice of praecipe to enter default judgment pursuant to Pa.R.C.P. 237.1 upon IPG on June 16, 2016, more than 10 days before the praecipe was filed. *See* Jones's Praecipe to Enter Default Judgment, 6/28/2016, at ¶ 2. In both the praecipe to enter default judgment and the notice thereof, Jones set forth IPG's address as 1515 Market Street, Suite 1200, Philadelphia, PA 19103. *See* Jones's Praecipe to Enter Default Judgment, 6/28/2016, at Exhibit 2. Months later, on November 14, 2016, Jones filed a Praecipe to Issue Writ of Attachment against IPG's accounts at PNC Bank. *See* Praecipe for Writ of Execution,

11/14/2016, at 1; Jones's Brief at 3-4. Jones states that "[t]his Writ, along with the [i]nterrogatories on PNC Bank, were served on PNC Bank on November 21, 2016." Jones's Brief at 4; *accord* IPG's Brief at 9, 13, 16.[2]

Then, on November 29, 2016, IPG filed a petition to open the default judgment. In its petition, IPG claimed that "[t]hrough this lawsuit, [Jones] improperly seeks to collect all of his investment back, with interest, before the sale of the property has taken place and in total contravention of the actual agreement between the parties…." Petition ¶ 2. Moreover, IPG alleged that Jones "utterly failed to provide [IPG] with the required notice of the lawsuit against [it]. [Jones] failed to affect service of the Complaint or of the Notice of Intent to Enter Default Judgment." *Id.* at ¶ 3. Specifically, IPG stated that when Jones attempted service upon IPG via hand delivery at the 1515 Market Street address on May 24, 2016, IPG "had not maintained an office [there] for the preceding five months, having terminated the lease agreement as of December 31, 2015." *Id.* at ¶¶ 5-6. Similarly, IPG explained that it "was not served with the required Notice pursuant to [Pa.R.C.P.] 237.1, the Praecipe or any related documents" because Jones had "again attempted service at the 1515 Market Street location" and "[b]y this time, [IPG] had not maintained an office there for approximately six (6) months." *Id.* at ¶ 11. In short, IPG claimed that it was not properly served

---

[2] According to IPG, PNC Bank consequently "froze all accounts in [IPG's] name." *See* Petition ¶ 14.

with either the Complaint or the documents relating to the default judgment. *See id.* at ¶¶ 6, 11.

Nevertheless, IPG admitted that it "first learned of the default judgment entered against it in this case" in or around early July 2016. *Id.* at ¶ 12. According to IPG, "the principle [*sic*] of IPG[, Chris Tucker,] recalled at some point having received an email from a staff person at his former office location attaching the underlying complaint but [he] was under the impression that [Jones] was not pursuing the lawsuit since [IPG] had never been properly served, had never received copies of the complaint at the other addresses [Jones] had previously used for [IPG] and had never received any notice of further activity in that case." *See* Exhibit A to IPG's Reply Brief in Support of Motion to Open Default Judgment, 12/15/2016, at ¶ 5 (hereinafter "Scheib Aff.").[3] Even so, IPG explained that "the parties began settlement discussions on or around July 11, 2016[,]" and they "continued through November 4, 2016, at which point the parties determined that continued negotiations would not be fruitful." Petition ¶ 13.[4] During an initial communication between counsel for the parties, IPG's attorney allegedly advised Jones's attorney that IPG "had no funds with

_____

[3] Further, IPG claims to have first learned of the default judgment entered against it on July 8, 2016, "upon searching the public dockets for an unrelated matter involving [IPG]." *See* Scheib Aff. ¶ 7.

[4] Jones, in contrast, claims that "settlement discussions had reached an impasse" as of October 4, 2016. Jones's Brief at 10.

which to retain different counsel or to offer a cash settlement since the only real asset belonging to [IPG] was the residential property underlying the parties' dispute that had yet to sell." **See** Scheib Aff. ¶ 4.[5,6] IPG also acknowledged that its petition to open default judgment "was filed approximately four months from when [IPG] first learned of the Default Judgment, but just over three weeks from the dissolution of settlement discussion between the parties (November 4, 2016)." **See** Petition ¶ 25.[7]

_____

[5] The attorney that was representing IPG at this stage of the litigation is married to Chris Tucker, the principal of IPG. **See** Scheib Aff. ¶ 3. According to IPG, its prior counsel "advised [Jones's counsel] that she … preferred not to formally enter her appearance in the matter, but, in hopes of facilitating a resolution between the parties, intended to limit the scope of the representation to settlement negotiations if possible." IPG's Reply Brief in Support of Motion to Open Default Judgment, 12/15/2016, at 4. IPG states that counsel for Jones "did not object and assured … that he would take no action on the judgment during the pendency of settlement discussions." **Id.**

[6] According to IPG's counsel,

> [i]n the settlement discussion that occurred between July 8th and July 15th, [IPG's counsel] advised [Jones's] counsel of two claims that [IPG] had against [Jones], including (1) a $49,816.29 loan that [IPG] had paid on behalf of [Jones] and that [Jones] had previously agreed should be taken out of his share of the proceeds from the sale of the property underlying the parties' dispute; and (2) an outstanding balance of more than $30,000 owed by [Jones] to [IPG] for services and costs related to a student housing project. Accordingly, these funds were factored into the ongoing settlement negotiations between the parties.

**See** Scheib Aff. ¶ 10.

[7] On November 30, 2016, the day after it filed its petition to open the default judgment, IPG filed an emergency motion to stay the writ of execution
*(Footnote Continued Next Page)*

- 5 -

Following briefing by the parties, on December 23, 2016, the trial court ultimately denied IPG's petition to open default judgment. It reasoned:

> It is clear from the pleadings in this matter that [IPG] had notice of the complaint and default judgment in this matter since at least July 8, 2016. In fact, it appears that service in the first instance was proper as well. Nevertheless, the parties engaged in discussions to resolve[] this case (and others) for several months. This court is able to glean from the tenor of the discussions that settlement was not only not likely, it was simply not realistic. [IPG] was completely without funds to resolve [its] litigation issues and could not retain independent counsel. [IPG's] proffered defense to the matter is totally without merit.
>
> While this court does not agree with [Jones's] overbroad reading of ***Ruczynski v. Jesray Construction Co.***, 457 Pa. 510[, 326 A.2d 326] (1974), it is clear that under certain circumstances, including those presented here, settlement discussions will not insulate a party who files an otherwise untimely petition to open a default judgment. The delay in this case was purposeful — it was simply an effort to buy time and not to resolve the issues.
>
> ***U.S. Bank N.A. v. Mallory***, 982 A.2d 986, 994-95 (Pa. Super. [] 2009)[,] sets forth the following three requirements for a petition to open default judgment: (1) prompt filing; (2) justifiable excuse for the delay that caused the default; and (3) a meritorious defense to the allegations. All three of these requirements must be met for a petition to open a default judgment to be successful.
>
> Under the specific circumstances of the instant case, the petition was not timely, as the close to five month delay was

*(Footnote Continued)* ───────────────

pending the outcome of its petition to open default judgment, as well as a stipulation between the parties reflecting the same. ***See*** IPG's Brief at 9; Jones's Brief at 4. On December 5, 2016, the trial court entered an order that neither party shall access the funds in IPG's PNC Bank accounts that had been attached absent written agreement of the parties or an order of the trial court. ***See*** Trial Court Order, 12/5/2016, at 1 (single page).

inexcusable. The purported settlement discussions would be better characterized as "delaying the inevitable." Perhaps independent counsel could have better served [IPG] but, nevertheless, the delay in this case is fatal, as [IPG] had legal and actual notice of the complaint since at least early July 2016 and the petition to open was not filed until November 29, 2016. Finally, [IPG's] defense is not meritorious in the least. [IPG] signed the note and did not pay in accordance with its terms.

Based on the foregoing, [IPG's] petition is denied.

Trial Court Order (referred to herein as "TCO"), 12/23/2016, at 1 n.1.

On January 20, 2017, IPG filed a notice of appeal. The trial court did not direct IPG to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[8] On appeal, IPG raises the following issue for our review:

Whether the [trial court] abused [its] discretion or erred as a matter of law in deciding that [IPG] did not meet all three requirements for a Petition to Open a Default Judgment.

IPG's Brief at 8.

Initially, we set forth our standard of review:

[A] petition to open a judgment is an appeal to the equitable powers of the court. It is committed to the sound discretion of the hearing court and will not be disturbed absent a manifest abuse of that discretion. Ordinarily, if a petition to open a judgment is to be successful, it must meet the following test: (1) the petition to open must be promptly filed; (2) the failure to

_____

[8] We note that the trial court did not issue a designated Pa.R.A.P. 1925(a) opinion, but instead relied on its December 23, 2016 order, which sets forth its reasons for denying IPG's petition to open the default judgment. **See** Trial Court Opinion, 2/7/2017, at 1 (single page); Pa.R.A.P. 1925(a)(1) ("Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order….").

appear or file a timely answer must be excused; and (3) the party seeking to open the judgment must show a meritorious defense. However, where the party seeking to open a judgment asserts that service was improper, a court must address this issue first before considering any other factors. If valid service has not been made, then the judgment should be opened because the court has no jurisdiction over the defendant and is without power to enter a judgment against him or her. In making this determination, a court can consider facts not before it at the time the judgment was entered. Thus, if a party seeks to challenge the truth of factual averments in the record at the time judgment was entered, then the party should pursue a petition to open the judgment, not a petition to strike the judgment.

*Cintas Corp. v. Lee's Cleaning Services, Inc.*, 700 A.2d 915, 919 (Pa. 1997) (internal citations omitted). We further note that "[a]n abuse of discretion occurs when a trial court, in reaching its conclusions, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will." *US Bank*, 982 A.2d at 994 (citation omitted).

At the outset, we must determine if Jones properly served IPG with the complaint. IPG claims that "it was never properly served with the lawsuit or [Pa.R.C.P.] 237 Notice, and therefore, judgment cannot be entered against it by this Court because the Court lacks personal jurisdiction over it." IPG's Brief at 15. Specifically, IPG insists that Jones "served [it] with the Complaint at an address that was not a regular place of business or activity

for [IPG], and there was no authorized agent at that address to accept service." *Id.*[9]

Jones, on the other hand, argues that "service of the Complaint was made by hand delivery upon a woman who identified herself as the 'agent or person in charge at office [*sic*] or usual place of business of [IPG]." Jones's Brief at 15 (bracket in original; citation to record omitted). It states that "[w]here the return of service indicates that service was made on a person who represented herself to be a person in charge of the regular place of business or activity of a corporate defendant, service is proper on the face of the record." *Id.* at 15-16 (citations omitted). Furthermore, it points out that "IPG admits [to] being provided with a copy of the Complaint via an 'email from a staff person' at the office where the Complaint was served." *Id.* at 16 (citation to record omitted).

In short, the parties dispute whether service on Robin Martinez — the woman who was served at IPG's prior office — satisfies Rule 424, namely subsection (2). Rule 424 states:

_____

[9] IPG likewise states it "never received the Notice of Intent to Enter Default Judgment, as it was also mailed to an address that was not a regular place of business or activity for [IPG]." IPG's Brief at 15. IPG, however, does not develop any arguments on appeal specifically pertaining to what would constitute proper service of Jones's Notice of Intent to Enter Default Judgment. Therefore, we do not separately address this argument. *Lechowicz v. Moser*, 164 A.3d 1271, 1276 (Pa. Super. 2017) ("It is not the role of this Court to develop an appellant's argument where the brief provides mere cursory legal discussion.").

Service of original process upon a corporation or similar entity shall be made by handing a copy to any of the following persons provided the person served is not a plaintiff in the action:

(1) an executive officer, partner or trustee of the corporation or similar entity, or

(2) the manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation or similar entity, or

(3) an agent authorized by the corporation or similar entity in writing to receive service of process for it.

> *Note*: Substituted service pursuant to Rule 402(a)(2) upon a corporation or similar entity is not permitted by this rule.

Pa.R.C.P. 424.

With respect to Rule 424(2), our Supreme Court has previously explained:

While there are few appellate cases interpreting the phrase "person for the time being in charge" in Rule 424(2), Pennsylvania courts addressing this issue have recognized that the purpose of the rule is to satisfy the due process requirement that a defendant be given adequate notice that litigation has commenced.[3] ***Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.***, 988 F.2d 476 (3d Cir.1993); ***Trzcinski v. Prudential Property and Casualty Ins. Co.***, 409 Pa. Super. 114, 597 A.2d 687 (1991). Thus, in ***Grand Entertainment***, the Court of Appeals for the Third Circuit held that a receptionist, who was located in the lobby of a building where the defendants were tenants and who was not employed by the defendants, did not qualify as a "person for the time being in charge" because she did not have a sufficient connection to the defendants.[10]

_____

[10] To elaborate, in ***Grand Entertainment***, the court observed that "[a] 'person for the time being in charge' should either derive or appear to derive authority from the party upon whom service is attempted." ***Grand Entertainment***, 988 F.2d at 486. Unlike the facts in the case *sub judice*, the ***Grand Entertainment*** Court explained that "the building receptionist did not work for the Spanish defendants ***nor did she represent that she***
*(Footnote Continued Next Page)*

Similarly, in **Trzcinski**, the Superior Court held that the receptionist of a law firm, which had previously represented the defendant in other matters, was not the "person for the time being in charge" of the defendant's regular place of business.[11] Additionally, in **Fisher v. Kemble Park, Inc.**, 186 Pa. Super. 407, 142 A.2d 353 (1958), where the court interpreted the same language in Pa.R.C.P. 2180(a)(2), a predecessor to Pa.R.C.P. 424(2), the court held that service on a janitor in a building owned by the defendant was not sufficient. However, where service was made on a receptionist in the defendant's offices and the receptionist represented to the process server that she was the person in charge, the Superior Court held that service was proper. **Hopkinson v. Hopkinson**, 323 Pa. Super. 404, 470 A.2d 981 (1984) (interpreting Pa.R.C.P 2180(a)(2)), *overruled on other grounds*, **Sonder v. Sonder**, 378 Pa. Super. 474, 549 A.2d 155 (1988). The common thread among these cases is that there must be a sufficient connection between the person served and the defendant to demonstrate that service was reasonably calculated to give the defendant notice of the action against it.

> [3] We note that a leading commentator on Pennsylvania practice has stated the following concerning the interpretation of a "person in charge for the time being" pursuant to Pa.R.C.P. 424(2):
>
> > It should not be possible for a defendant to avoid a valid service of original process by the device of placing an office or usual place of business under the control of a subsidiary or minor employee and thereafter taking the position that such person did not bear a proper relationship to the company so

*(Footnote Continued)* ———————————

**did.** **The process server was not led to believe that any special relationship existed between the building receptionist and the Spanish defendants**." **Id.** (emphasis added).

[11] We note that the **Trzcinski** Court observed that "the correct inquiry to determine propriety of service under Rule 424 does not focus on the location but rather on the identity of the individual served." **Trzcinski**, 597 A.2d at 689.

> that service upon him or her would be sufficient to assure the requisite notice to the company.
>
> Goodrich Amram 2d § 424(2):2 (1991).

*Cintas*, 700 A.2d at 919-20. *See also Liquid Carbonic Corp. v. Cooper & Reese, Inc.*, 416 A.2d 549, 552 (Pa. Super. 1979) (determining that the appellant was not properly served with the complaint where the deputy sheriff "made no real attempt to ascertain whether the person to whom he gave the complaint was an agent or person for the time being in charge of [the] appellant's office[,]" and the appellant proffered evidence that "none of its officers or employees ever received the complaint").

In the case at bar, Isaac Finkelstein, the process server, filed a service affidavit affirming that he served by hand delivery Robin Martinez, who he claimed represented herself to be an agent or person in charge at the office or usual place of business of IPG. *See* Finkelstein Aff. Moreover, IPG conceded that "Chris Tucker, the principle [*sic*] of IPG, recalled at some point having received an email from a staff person at his former office location attaching the underlying complaint…." Scheib Aff. ¶ 5.[12] Thus, we

---

[12] We further note that IPG makes no specific factual assertions in its petition to open default judgment regarding the identity of Robin Martinez and her relationship to IPG, other than to merely aver that she was "a staff person at [Chris Tucker's] former office location…." Scheib Aff. ¶ 5. For instance, we cannot ascertain from the record whether she was employed by IPG in some capacity, why she represented herself to Isaac Finkelstein to be an agent or person in charge at IPG's office or usual place of business, and how and when she got in touch with Chris Tucker by email regarding the complaint.

believe that there was a "sufficient connection" between Robin Martinez and IPG "to demonstrate that service was reasonably calculated to give the defendant notice of the action against it." **See Cintas**, 700 A.2d at 920. Further, IPG's generalized and vague arguments fail to convince us otherwise. Accordingly, we conclude that Jones properly served IPG with the complaint.

Having deemed service to be proper, we must evaluate whether the trial court abused its discretion in denying IPG's petition to open the default judgment. To reiterate, "if a petition to open a judgment is to be successful, it must meet the following test: (1) the petition to open must be promptly filed; (2) the failure to appear or file a timely answer must be excused; and (3) the party seeking to open the judgment must show a meritorious defense." **Cintas**, 700 A.2d at 919 (citations omitted). "All three criteria must be met, and the three requirements must coalesce." **Rigid Fire Sprinkler Service, Inc. v. Chaiken**, 482 A.2d 249, 251 (Pa. Super. 1984) (citations and internal quotation marks omitted).

Here, IPG contends that the trial court wrongly determined that it did not promptly petition to open the default judgment because it waited nearly five months after the default judgment was entered to do so. **See** IPG's Brief at 18-19. In making this determination, IPG claims that the trial court "ignores the issues with service and the very reasonable and understandable approach taken by [it] to not litigate the service issue, to engage in discussions designed only in good faith towards determining whether the

- 13 -

matter can be resolved, and the immediate steps taken by [IPG] in late November of 2016 once it realized that [Jones] was in fact executing upon the judgment." *Id.* at 19. Moreover, IPG maintains that it "filed its Petition six days after it learned of [Jones's] efforts to execute upon a judgment. This is timely and should be the barometer under these circumstances." *Id.* at 19. We disagree.

With respect to the first prong regarding whether the petition to open was promptly filed, this Court has stated:

> The timeliness of a petition to open judgment is measured from the date that notice of the entry of the default judgment is received. The law does not establish a specific time period within which a petition to open a judgment must be filed to qualify as timeliness. Instead, the court must consider the length of time between discovery of the entry of the default judgment and the reason for delay.

*US Bank*, 982 A.2d at 995 (citation omitted). Further, we observed:

> In previous decisions, the appellate courts have held that delays of less than eighty-two days between notice of the entry of the judgment and filing a petition to open were not prompt. *See Pappas v. Stefan*, 451 Pa. 354, 304 A.2d 143 (1973) (fifty-five days); *Quatrochi v. Gaiters*, 251 Pa. Super. 115, 380 A.2d 404 (1977) (sixty-three days). In cases where the appellate courts have found a "prompt" and timely filing of the petition to open a default judgment, the period of delay has normally been less than one month. *See Duckson v. Wee Wheelers, Inc.*, 423 Pa. Super. 251, 620 A.2d 1206 (1993) (one day is timely); *Alba v. Urology Associates of Kingston*, 409 Pa. Super. 406, 598 A.2d 57 (1991) (fourteen days is timely); *Fink v. General Accident Ins. Co.*, 406 Pa. Super. 294, 594 A.2d 345 (1991) (period of five days is timely).

*US Bank*, 982 A.2d at 995.

In addition, settlement negotiations do not necessarily justify a delay in filing a petition to open.  **See Kennedy v. Black**, 424 A.2d 1250, 1252 (Pa. 1981) ("While settlements are clearly favored and default judgments are not, we do not believe the attempts in this case to negotiate a settlement can justify the appellees' protracted delay in the filing of an answer."); **Ruczynski**, 326 A.2d at 328 ("Although the attorneys for the parties attempted to negotiate a settlement, there is no claim that any extension of time was requested or granted for the filing of an answer.  No other valid reason has been presented to excuse the delay.  Under these circumstances, the appellees did not meet the requirement of promptly filing the petition to open the judgment.") (citations omitted); **Chaiken**, 482 A.2d at 253 (explaining that the appellees' attempt to "obtain a settlement for less than the full amount of the judgment" did not adequately explain the delay in filing a petition to open, where "[t]here was no evidence … that [the] appellant or its counsel had engaged in conduct designed to confuse [the] appellee or lull her into a false sense of security").

Here, IPG admits to learning of the entry of the default judgment on or around July 8, 2016.  Scheib Aff. ¶ 7.  However, it did not file its petition to open the default judgment until November 29, 2016, which was 144 days later.  IPG's Brief at 9; Jones's Brief at 4.[13]  Based on the case law *supra*,

---

[13] IPG offers no supporting authority, nor are we aware of any, for its contention that "[u]nder these circumstances where service is contested and
*(Footnote Continued Next Page)*

IPG's petition does not appear to be promptly filed. Nevertheless, IPG claims that this nearly five-month span resulted from, and should be excused because of, the parties' ongoing settlement negotiations. We see two main problems with this argument. First, while the negotiations were still pending, IPG recognized that it "had no funds with which … to offer a cash settlement since the only real asset belonging to [IPG] was the residential property underlying the parties' dispute that had yet to sell." Scheib Aff. ¶ 4.[14] As a result, the trial court reasonably found that settlement was "simply not realistic[,]" as IPG was "completely without funds to resolve [its] litigation issues and could not retain independent counsel." TCO at 1 n.1. Second, IPG asserts that settlement negotiations broke down on November 4, 2016. Scheib Aff. ¶ 18.[15] However, IPG still

*(Footnote Continued)* ———————————

not proper, the appropriate determination of whether [IPG] timely filed a Petition to Open should be from when [it] learned of the efforts of [Jones] to execute upon the judgment it had received." IPG's Brief at 16, 18-19.

[14] Despite having no funds on hand to offer a cash settlement, IPG argues that it had two claims against Jones that amounted to a total of roughly $79,816.29, and that "these funds were factored into the ongoing settlement negotiations between the parties." Scheib Aff. ¶ 10. However, we reiterate that Jones was seeking the return of a $205,000 loan, plus interest. *See* IPG's Brief at 11; Jones's Brief at 5. While IPG may be correct that "[t]he trial court's findings assume that a settlement requires a significant monetary payment to be paid from [IPG] to [Jones]," *see* IPG's Brief at 21, we do not view that finding as being manifestly unreasonable in light of the record.

[15] Again, Jones maintains that settlement discussions ended on October 4, 2016. Jones's Brief at 10. Therefore, Jones argues that IPG waited 56 days
*(Footnote Continued Next Page)*

took no immediate action to open the default judgment as it "was unable to identify funds with which to retain separate counsel within the two weeks before [Jones] executed the Writ of Execution on November 21, 2016." Scheib Aff. ¶ 19. The additional delay of at least 25 days between the breakdown of settlement discussions and IPG's filing of its petition to open corroborates the trial court's finding that such negotiations were actually "an effort to buy time and not to resolve the issues." TCO at 1 n.1. Thus, we conclude that the trial court did not abuse its discretion in determining that IPG did not promptly file its petition to open the default judgment, and the settlement negotiations did not justify the delay. Based on the foregoing, the trial court properly denied IPG's petition to open the default judgment.[16]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/26/2017

*(Footnote Continued)* ————————

from the breakdown of settlement discussions to file its petition to open. *Id.* at 12.

[16] Because we dispose of IPG's appeal on this basis, we need not address whether its failure to appear or file a timely answer must be excused, and if it has shown a meritorious defense. *See Cintas*, 700 A.2d at 919.