IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael J. Burrelli, : 
                Appellant : 
                 : 
      v. :       No. 1399 C.D. 2017
                 :       SUBMITTED: March 2, 2018
Mark Julian : 

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                    FILED:  May 17, 2018

Michael J. Burrelli appeals, *pro se*, from the July 21, 2017 Order of the Court of Common Pleas of Lawrence County (Trial Court) granting Union Township Police Chief Mark Julian's (Chief Julian) Motion for Summary Judgment and dismissing Mr. Burrelli's Complaint with prejudice. We affirm.[1]

## Background

Mr. Burrelli has been incarcerated since August 22, 2013.[2] On October 31, 2014, Mr. Burrelli filed a civil rights complaint against Chief Julian of the Union Township Police Department (Department), alleging that Chief Julian failed to properly

---

[1] Mr. Burrelli timely filed his Notice of Appeal with the Pennsylvania Superior Court, which transferred the matter to this Court on September 20, 2017.

[2] Mr. Burrelli is serving a sentence of 10 to 20 years' incarceration for voluntary manslaughter at the State Correctional Institution – Greene County. Trial Ct. Op., 9/15/17, at 6 n.1; Trial Ct. Op., 7/21/17, at 1 n.1.

investigate the thefts of four of Mr. Burrelli's vehicles[3] under Section 7113(a) of the Vehicle Code, 75 Pa. C.S. § 7113(a).[4]  In his Complaint, Mr. Burrelli alleged that the vehicles were stolen while he was incarcerated and that Chief Julian's failure to properly investigate the vehicle thefts violated Mr. Burrelli's equal protection and due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.  Mr. Burrelli sought injunctive and declaratory relief, as well as monetary damages, under Section 1983 of the Civil Rights Act of 1871 (Section 1983), 42 U.S.C. § 1983.[5]

Mr. Burrelli served the Complaint on Chief Julian on November 13, 2014, and served Interrogatories on Chief Julian on November 26, 2014.  On December 17, 2014,

---

[3] The vehicles at issue are: a 1997 Cadillac Seville; a 1998 Chevrolet Cavalier; a 1998 Pontiac Firebird Trans Am; and a 2001 Chrysler 300M.  *See* Compl., Ex. D.

[4] Section 7113(a) of the Vehicle Code states:

Every police department or police office, having knowledge of a stolen vehicle, shall immediately furnish the State Police with full information about the stolen vehicle. The State Police shall forward the stolen vehicle information to the department.

75 Pa. C.S. § 7113(a).

[5] Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Actions brought under Section 1983 for violations of federal constitutional rights may be filed in Pennsylvania courts and are not subject to state sovereign immunity defenses.  *See Owens v. Shannon*, 808 A.2d 607, 610 (Pa. Cmwlth. 2002).  To state a claim for relief under Section 1983, the plaintiff must:  (1) allege a violation of rights secured by the United States Constitution and the laws of the United States; and (2) show that the alleged deprivation of rights was committed by a person acting under the color of state law.  *Anelli v. Arrowhead Lakes Cmty. Ass'n, Inc.*, 689 A.2d 357, 360 (Pa. Cmwlth. 1997).

2

Mr. Burrelli filed a Praecipe for Entry of a Default Judgment against Chief Julian for his failure to answer the Complaint. On the same date, the Trial Court entered a default judgment against Chief Julian in the amount of $132,000.

Fourteen days later, on December 31, 2014, Chief Julian filed a Petition to Open the Default Judgment. In his Petition, Chief Julian averred that he did not receive notice of the default judgment until December 22, 2014, nor did he receive the 10-day notice of intent to seek a default judgment required by Pa. R.C.P. No. 237.1. Pet. to Open Default Judg., 12/31/14, ¶¶ 4, 6(B). Chief Julian also averred that: (1) the Department investigated Mr. Burrelli's claim and determined that the matter was civil in nature; (2) the investigation revealed that Mr. Burrelli did not own the allegedly stolen vehicles; (3) the Pennsylvania State Police informed the Department that the State Police was handling the matter; (4) Department officers went to the prison and spoke with Mr. Burrelli about their investigation; and (5) Mr. Burrelli told the officers that he would discontinue the action. *Id.* ¶¶ 5, 6. Chief Julian, however, did not attach to his Petition a copy of the Answer he wished to file as required by Pa. R.C.P. No. 237.3(a).[6]

On January 2, 2015, the Trial Court issued upon Mr. Burrelli a Rule to Show Cause why the default judgment should not be opened, requiring a response within 20 days. *See* Pa. R.C.P. No. 206.5(c).[7] Mr. Burrelli timely filed an Answer to the Petition

---

[6] At the time Chief Julian filed his Petition to Open, Rule 237.3(a) provided: "A petition for relief from a judgment of . . . default entered pursuant to Rule 237.1 shall have attached thereto a verified copy of the complaint or answer which the petitioner seeks leave to file." Former Pa. R.C.P. No. 237.3(a). Rule 237.3 was amended on October 4, 2016 to remove the verification requirement and to add preliminary objections as a pleading that may be attached to a petition to open a default judgment; the amendment became effective on January 1, 2017.

[7] Rule 206.5(c) provides: "If the petition is within the scope of Rule 206.1(a) [i.e., an application to strike and/or open a default judgment or a judgment of non pros], is properly pleaded, and states prima facie grounds for relief, the court shall enter an order issuing a rule to show cause and may grant a stay of proceedings." Pa. R.C.P. No. 206.5(c).

3

to Open on January 20, 2015. In his Answer, Mr. Burrelli did not specifically deny the averments in the Petition to Open regarding the Department's investigation, but he presented a different account of his conversations with the investigating officers. According to Mr. Burrelli, two Department officers came to the prison on December 5, 2014 to speak with him about their investigation but "refused" to report his vehicles as stolen. Ans. to Pet. to Open Default Judg., 1/20/15, ¶ 6(A). Mr. Burrelli also alleged that on December 30, 2014, Chief Julian, his counsel, and another officer came to the prison "to attempt to get [Mr. Burrelli] to sign a settlement paper and in return offered to assist [him] in a lawsuit against the individual who admitted to selling [his] vehicles." *Id.* ¶ 8(F)(i); *see also* Br. in Support of Ans. to Pet. to Open, 1/21/16, at 1-2 (unpaginated) (alleging that on December 30, 2014, Chief Julian tried to "persuade and bully [Mr. Burrelli] into filing a 'settlement paper' in return for copies of [the Department's] 'investigation'").

While the Petition to Open was still pending, Mr. Burrelli filed a Motion for an Order Compelling Discovery and a Motion for Sanctions against Chief Julian for his failure to answer the November 2014 Interrogatories. The Trial Court held a hearing on the Motion for Sanctions on April 27, 2015.[8] At the hearing, Mr. Burrelli, acting *pro se*, stated that through these discovery requests, he was attempting to find out which police officers were on duty and responsible for answering the Department's phones on the dates that he had tried calling to report his vehicles stolen. N.T., 4/27/15, at 4, 6. Mr. Burrelli had also attempted to subpoena records from Cascade Auto Wrecking, the scrap yard to which his vehicles were allegedly sent without his authorization. *See id.* at 8. After the hearing, the Trial Court dismissed the Motion for Sanctions,

---

[8] Two different trial judges handled the various motions and hearings in this case: President Judge Dominick Motto and Judge J. Craig Cox. Judge Motto presided over the hearing on the Motion for Sanctions and ruled on the discovery motions.

concluding that Chief Julian had properly responded to Mr. Burrelli's discovery requests.

On September 4, 2015, Mr. Burrelli filed a Petition for Writ of Execution of the $132,000 judgment against Chief Julian, plus interest. On September 18, 2015, Chief Julian filed a Motion to Stay and Dismiss the Writ of Execution. On September 25, 2015, the Trial Court entered an Order scheduling argument on both the Petition to Open and the Petition for Writ of Execution for January 25, 2016.[9]

On December 21, 2015, Chief Julian filed a supplement to his Petition to Open, which included an Answer and New Matter. On December 30, 2015, Chief Julian filed a brief in support of his Petition to Open and Motion to Dismiss the Writ of Execution. On January 4, 2016, the Trial Court entered an Order cancelling oral argument, stating that it would decide both matters on the briefs.[10] On January 19, 2016, Mr. Burrelli filed a brief in support of his Answer to the Petition to Open.

Approximately 13 months after the Department filed its Petition to Open the Default Judgment, on February 9, 2016, the Trial Court granted both the Petition to Open the Default Judgment and the Motion to Dismiss the Writ of Execution and

---

[9] Judge Cox entered this Order and presided over all subsequent proceedings relating to the Petition to Open the Default Judgment and the Motion for Summary Judgment.

[10] Lawrence County Local Rule of Civil Procedure L206.4(C)(1) permits a trial judge to decide a petition to open a default judgment on the pleadings and briefs without oral argument. Rule L206.4(C)(1) states:

> A rule to show cause shall be issued at the discretion of a judge of the Court as contemplated by Pa.R.C.P. 206.5. *The Court, upon its own initiative, may schedule an evidentiary hearing on disputed issues of material fact, or, set forth in the Order a time period for completing disposition or other appropriate discovery, and the scheduling of oral argument. The Court may, in its discretion, provide for disposition of the manner on briefs, without the necessity of oral argument.* In such instances, the Court shall establish a briefing schedule in its initial order.

ordered Chief Julian to file an Answer to the Complaint within 20 days.[11] Chief Julian filed an Answer and New Matter on February 24, 2016.

On April 26, 2017, Chief Julian filed a Motion for Summary Judgment. In support of his Motion, Chief Julian submitted an incident report prepared by Officer Joshua Kwolek detailing the Department's investigation of Mr. Burrelli's theft allegations. In the report, Officer Kwolek stated verbatim:

> THE UNION TOWNSHIP POLICE DEPARTMENT RECEIVED A LETTER IN THE MAIL IN THE MONTH OF FEBRUARY FROM A MICHAEL BURRELLI IN REFERENCE TO HIS VEHICLES BEING STOLEN BY HIS SISTER SHAWNA SHOLTIS. THIS OFFICER WAS ASSIGNED TO INVESTIGATE THIS INCIDENT. THIS OFFICER SPOKE WITH TROOPER VASCETTI OF THE PA STATE POLICE AND ADVISED HIM WHAT MICHAEL BURRELLI WAS CLAIMING AT WHICH TIME VASCETTI STATED THAT THIS INCIDENT IS A CIVIL MATTER AND THAT I[T] HAD NOTHING TO DO WITH THE UNION POLICE. THIS OFFICER ALSO SPOKE WITH [ASSISTANT DISTRICT ATTORNEY] LUANNE PARKONEN AND SHE ALSO ADVISED THIS OFFICER THAT IT WAS A CIVIL MATTER AND THAT THE UNION TOWNSHIP POLICE COULD NOT DO ANYTHING ABOUT THIS INCIDENT. AT WHICH TIME THIS OFFICER CLEARED THE CASE.
>
> AROUND THE BEGINNING OF NOVEMBER THE UNION TOWNSHIP POLICE GOT ADDITIONAL PAPERWORK FROM

---

Lawrence Cty. L.R.C.P. No. L206.4(C)(1) (emphasis added).

[11] Mr. Burrelli prematurely filed a Notice of Appeal with the Superior Court from the February 9, 2016 Order, which was dismissed as interlocutory. *See* Pa. R.A.P. 311(a)(1); *see also Joseph Palermo Dev. Corp. v. Bowers*, 564 A.2d 996, 997 (Pa. Super. 1989) (recognizing that order granting petition to open or strike default judgment is not final order). However, because the July 21, 2017 Order granting summary judgment disposed of all claims and all parties, Mr. Burrelli's present challenge to the opening of the default judgment is properly before this Court. *See Womeldorf by Womeldorf v. Cooper*, 654 A.2d 238, 241 n.4 (Pa. Cmwlth. 1995) (noting that appellants, who improperly filed interlocutory appeal from order sustaining preliminary objections as to some defendants, were not precluded "from raising the issue of the trial court's dismissal of the complaint . . . on appeal after the entry of a final order disposing of all claims and all parties"); Pa. R.A.P. 341.

6

MICHAEL BURRELLI IN REFERENCE TO HIS VEHICLE[S] BEING STOLEN BY HIS SISTER. AT WHICH TIME LT JULIAN ADVISED THIS OFFICER TO LOOK INTO THIS INCIDENT. AT WHICH TIME THIS OFFICER CONTACTED VICTIM[']S SISTER SHAWNA SHOLTIS ON 11/17/14 AT ABOUT 20:15 HOURS IN REFERENCE TO MICHAEL[']S VEHICLES. SHAWNA TOLD THIS OFFICER THAT THE VEHICLES WERE TOWED FROM THE LOT BACK IN DECEMBER BY A[N] ASHLEY VEREB WHO WAS POWER OF ATTORNEY FOR MICHAEL BU[R]RELLI. SHAWNA STATED THAT AFTER THE VEHICLE[S] WERE REMOVED SHE DOES NOT KNOW WHAT HAPPENED TO THE SAID VEHICLES.

ON 11/17/14 THIS OFFICER ALSO INTERVIEWED ASHLEY VEREB AT THE UNION TOWNSHIP POLICE STATION. ASHLEY STATED THAT SHE DID REMOVE THE VEHICLES FROM THE LOT ON WEST STATE ST AND TOWED THE VEHICLES TO DEREK BLOOM[']S GARAGE ON HARBOR EDINBURG RD. IN UNION TOWNSHIP. VEREB STATED THAT SHE WAS POWER OF ATTORNEY FOR MICHAEL WHILE HE WAS IN JAIL. ASHLEY ALSO PROVIDED THIS OFFICER WITH A TITLE TO ONE OF THE VEHICLE[S] THAT IS OWNED BY HER THAT MICHAEL IS SAYING IS HIS. ASHLEY ALSO STATED THAT SHE DOES NOT KNOW WHAT HAPPENED TO THE VEHICLES AFTER THEY WERE AT DEREK BLOOM[']S GARAGE. ASHLEY GAVE A WRITTEN STATEMENT TO EVERYTHING THAT SHE TOLD THIS OFFICER.

ON 12/5/14 THIS OFFICER INTERVIEWED DEREK BLOOM AT THE UNION TOWNSHIP POLICE STATION. BLOOM STATED THAT ALL FOUR VEHICLE[S] WERE BEING STORED AT HIS GARAGE BY ASHLEY VEREB. BLOOM STATED THAT HE WAS CHARGING ASHLEY A STORAGE FEE. BLOOM STATED THAT ASHLEY WAS UNABLE TO PAY THE FEE SO SHE ADVISED HIM TO TAKE 2 OF THE VEHICLES TO THE SCRAP YARD. BLOOM STATED THAT HE TOOK 2 OF THE VEHICLES TO CASCADE AUTO WRECKING FOR SCRAP. THIS WAS CONFIRMED FROM CASCADE AUTO WRECKING BY LT. JULIAN. BLOOM ALSO STATED THAT HE WAS NOT SURE WHAT HAPPENED TO THE OTHER 2 VEHICLES.

7

THIS OFFICER WENT TO THE LAWRENCE COUNTY JAIL AND INTERVIEWED MICHAEL BUR[R]ELLI AND ADVISED HIM WHAT WE FOUND OUT ABOUT HIS VEHICLES. BUR[R]ELLI STATED THAT ASHLEY IS POWER OF ATTORNEY AND HE DID ADVISE ASHLEY IF SHE WAS HURTING FOR MONEY THAT SHE COULD SELL THE VEHICLE SO THAT SHE HAD MONEY. THIS OFFICER ADVISED MICHAEL THAT THIS WAS A CIVIL MATTER BETWEEN HIMSELF, VEREB, AND BLOOM.

THIS OFFICER CLEARED THE CASE AND TURNED ALL INFORMATION OVER TO THE UNION TOWNSHIP SOLICITOR JASON MEDURE.

Br. in Support of Summ. Judg. Mot., 4/26/17, Ex. A., at 1-2 (full capitalization in original). Chief Julian also submitted documentation indicating that the four vehicles in question were not owned by Mr. Burrelli. *See id.*, Ex. B.[12] Mr. Burrelli filed a response to the Summary Judgment Motion on June 12, 2017.

The Trial Court heard argument on the Summary Judgment Motion on July 13, 2017; Mr. Burrelli appeared and presented argument *pro se*.[13] On July 21, 2017, the Trial Court granted Chief Julian's Motion and dismissed Mr. Burrelli's Complaint with prejudice. Mr. Burrelli now appeals to this Court.

---

[12] The four documents, each titled "Response from Pennsylvania Bureau of Motor Vehicles," identify the owners of the vehicles as follows: Ashley Marie Vereb (1998 Pontiac); Dustin L. Weyant (1998 Chevrolet); Horace Mann (1997 Cadillac); and Cascade Auto Wrecking Inc. (2001 Chrysler). *See* Br. in Support of Summ. Judg. Mot., 4/26/17, Ex. B. The vehicle identification numbers (VINs) on these documents match the VINs identified by Mr. Burrelli. *See* Compl., Ex. D.

[13] At this proceeding, the parties and the Trial Court mentioned that Mr. Burrelli had other civil matters pending (apparently stemming from the same theft allegations), including: an action against Shawna Sholtis; an action against Trooper Joseph Vascetti and two District Attorneys; and a federal action against Chief Julian. *See* N.T., 7/13/17, at 6-7, 14-15, 19, 21. In addition, a May 28, 2015 Trial Court docket entry references "private criminal complaints against Derek Bloom and Cascade Auto Wrecking." Trial Ct. Dkt. Entries, Case No. 2014-11104 (full capitalization omitted).

## Issues

On appeal, Mr. Burrelli asserts that the Trial Court erred in granting Chief Julian's Petition to Open the Default Judgment because the Petition failed to comply with the requirements of Pa. R.C.P. No. 237.3 and did not set forth a legitimate excuse for his failure to timely respond to the Complaint. Mr. Burrelli also asserts that the Trial Court erred in granting Chief Julian's Motion for Summary Judgment because Chief Julian's failure to properly investigate the alleged vehicle thefts violated Mr. Burrelli's constitutional rights.

## Analysis

### 1. Petition to Open Default Judgment

A petition to open a default judgment is an appeal to the Trial Court's equitable powers and a matter of judicial discretion. *McCoy v. Public Acceptance Corp.*, 305 A.2d 698, 700 (Pa. 1973). The decision whether to grant or deny a petition to open a default judgment is within the Trial Court's sound discretion, and we will not reverse that decision "absent a 'manifest abuse of discretion.'" *Office of Atty. Gen., Bureau of Consumer Prot. v. Lubisky*, 88 A.3d 328, 332 n.5 (Pa. Cmwlth. 2014) (citation omitted).

To successfully open a default judgment, the defendant must show that he or she: (1) promptly filed the petition to open; (2) has a reasonable excuse for failing to respond to the complaint; and (3) has a meritorious defense. *Comyn v. Southeastern Pa. Transp. Auth.*, 594 A.2d 857, 858 (Pa. Cmwlth. 1991); *see Schultz v. Erie Ins. Exch.*, 477 A.2d 471, 472 (Pa. 1984). A petition to open must be "filed within ten days after the entry of the judgment on the docket." Pa. R.C.P. No. 237.3(b). However, if the defendant files a petition to open more than 10 days after the entry of judgment, as Chief Julian did here, then he or she must satisfy the three-part test.

9

"Generally, default judgments are not favored." *Peters Twp. Sanitary Auth. v. Am. Home and Land Dev. Co.*, 696 A.2d 899, 902 (Pa. Cmwlth. 1997). For this reason, the three-part test "should be evaluated in light of all the circumstances and equities of the case." *Lubisky*, 88 A.3d at 334 (quotation omitted); *see Peters Twp.*, 696 A.2d at 902 (court must decide whether equitable considerations require that party against whom default judgment was entered receive opportunity to have case decided on merits). However, a court may not "open a default judgment based on the 'equities' of the case when the defendant has failed to establish all three of the required criteria." *Lubisky*, 88 A.3d at 334 (quotation omitted).

Mr. Burrelli first challenges the Petition to Open on procedural grounds, claiming that Chief Julian's failure to attach an Answer to the Petition violated Pa. R.C.P. No. 237.3(a). At that time, Rule 237.3(a) provided that a petition to open a default judgment "shall have attached thereto a verified copy of the complaint or answer which the petitioner seeks leave to file." Former Pa. R.C.P. No. 237.3(a). However, "the comment to Rule 237.3 and case law interpreting Rule 237.3(b) support the proposition that relief from the entry of a default judgment may still be available even though a petitioner fails to attach a verified copy of the answer to the petition." *Smith v. Morrell Beer Distribs., Inc.*, 29 A.3d 23, 25 (Pa. Super. 2011).[14] Thus, a reviewing court should not strictly "enforc[e] technicalities to defeat apparently meritorious claims." *Id.* (quotation omitted); *see also Stauffer v. Hevener*, 881 A.2d 868, 871 (Pa. Super. 2005) (requiring court to look exclusively at answer attached to petition to open in deciding if there is meritorious defense is "overly strict interpretation of Rule 237.3(a)") (quotation omitted).

---

[14] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

As discussed more fully below, although Chief Julian did not attach an Answer to his Petition to Open, the averments in the Petition set forth clear factual allegations that, if proven, would support a meritorious defense. *See Boatin v. Miller*, 955 A.2d 424, 429 (Pa. Super. 2008) (*en banc*) (although petitioners did not file answer with petition to open, the petition itself set forth meritorious defense and factual allegations in petition appeared elsewhere in record). In addition, at the time the Trial Court ruled on the Petition to Open in February 2016, Chief Julian had filed a supplement to his Petition to Open, which included an Answer and New Matter. Thus, we conclude that Chief Julian's failure to initially attach an Answer was not fatal to his Petition.

We now turn to the merits of Chief Julian's Petition. In determining whether a petition to open was promptly filed, our Court has stated that "timeliness is measured *from the date that notice of the entry of the judgment is received*." *Lubisky*, 88 A.3d at 334 (emphasis in original). Here, Chief Julian filed his Petition to Open 14 days after the entry of judgment and only 9 days after receiving notice of its entry. *See* Pet. to Open Default Judg., 12/31/14, ¶ 4.[15] In fact, Mr. Burrelli has conceded that the Petition was promptly filed. *See* Burrelli's Br. at 24. Therefore, the Trial Court did not abuse its discretion in finding that Chief Julian promptly filed his Petition to Open.

Next, Chief Julian's Petition to Open set forth a reasonable excuse for his failure to timely respond to the Complaint. Chief Julian averred that the Department had investigated Mr. Burrelli's claims and determined that he did not own the allegedly stolen vehicles and that the matter was civil in nature. Pet. to Open Default Judg., 12/31/14, ¶ 5(A)-(B). Chief Julian also averred that Department officers spoke with Mr. Burrelli about the results of their investigation and believed he was going to discontinue the case. *Id.* ¶ 6(A).

---

[15] We also note that the Trial Court was closed from December 24, 2014 through December 26, 2014 for the Christmas holiday. Trial Ct. Op., 2/9/16, ¶ 17.

Moreover, at the hearing on the Motion for Sanctions, which took place while the Petition to Open was pending, Chief Julian's counsel, Union Township Solicitor Jason A. Medure, Esquire, addressed the circumstances surrounding the filing of the Petition to Open. Attorney Medure stated that Mr. Burrelli had served the Complaint on Chief Julian at the Department's address; however, the Department did not immediately forward the Complaint to Attorney Medure because it was investigating Mr. Burrelli's allegations. N.T., 4/27/15, at 12. Attorney Medure explained:

> [After the Department received the Complaint,] I believe that [the Department] was going to make an effort to resolve whatever issues [Mr. Burrelli] had. That was one of the times that they went to speak with him, and they were under the impression that [Mr. Burrelli] was in agreement with how [the Department] was going to go forward and he was not going to continue this lawsuit.
>
> Whether that – whether that impression was true or not I should not have relied upon that. By [that time], interrogatories [were] filed, and when we received the interrogatories, I go and speak to [Mr. Burrelli] with the police and see if there's any way that we could resolve this without going further into litigation. I was told no.
>
> At that point, the next document that this office receives is a default judgment. I originally thought the default judgment was improper because the 10-day notice wasn't given. It turned out that the 10-day notice was provided, but it was provided to the [Department]. The [Department] never provided me with the 10-day notice.
>
> By the time I received the default judgment, I file[d] . . . a motion to open the judgment based on the date of receipt.

*Id.* at 12-14. Mr. Burrelli did not contest these statements, but merely reiterated his contentions that "[t]hroughout [the Department's] investigation," the officers refused his requests to report the vehicles as stolen. *Id.* at 5-7.

12

There are no strict guidelines for determining what constitutes a "reasonable excuse" for failure to timely respond to a Complaint. "[W]hether an excuse is legitimate is not easily answered and depends upon the specific circumstances of the case." *US Bank N.A. v. Mallory*, 982 A.2d 986, 995 (Pa. Super. 2009) (quotation omitted). Thus, when presented with a petition to open a default judgment, the trial court is tasked with evaluating the facts of the particular case to determine whether the defendant's delay was reasonable.

Here, after receiving the Complaint, the Department promptly conducted an investigation into Mr. Burrelli's allegations and uncovered convincing evidence that Mr. Burrelli's vehicles were not, in fact, stolen and that the matter was civil in nature and not within the Department's jurisdiction. The Department maintained contact with Mr. Burrelli, advising him of its findings and trying to seek a resolution. Chief Julian and the Department believed, based on the officers' initial conversations with Mr. Burrelli and the investigative results indicating that this was a civil matter, that Mr. Burrelli would discontinue the case. All of these factors contributed to Chief Julian's initial delay in responding to the Complaint. Under these unique circumstances, we conclude that the Trial Court did not abuse its discretion in finding that Chief Julian satisfied the reasonable-excuse prong.

Finally, Chief Julian's Petition to Open included allegations of a meritorious defense that, if proven at trial, would entitle him to relief. As stated earlier, the Department determined that the allegedly stolen vehicles were not titled in Mr. Burrelli's name, a fact that Mr. Burrelli later admitted in open court.[16] After conducting

---

[16] The following exchange occurred at the argument on the Motion for Summary Judgment:

THE COURT: Well, would you agree that none of the certificates of title of the vehicles are registered in your name?

13

an investigation, which included interviewing Shawna Sholtis, Ashley Vereb, Derek Bloom, and Mr. Burrelli (twice at the prison), the Department also determined that Mr. Burrelli's allegations were civil, not criminal, in nature. Accordingly, we conclude that the Trial Court did not abuse its discretion in opening the default judgment.

## 2. Motion for Summary Judgment[17]

Summary judgment is appropriate only in those cases where the record clearly demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pa. State Ethics Comm'n*, 723 A.2d 174, 176 (Pa. 1999). The court must view the record in the light most favorable to the non-moving party, resolving all doubts about the existence of a genuine issue of material fact against the moving party. *Id.*; *see Guy M. Cooper, Inc. v. E. Penn Sch. Dist.*, 903 A.2d 608, 613 (Pa. Cmwlth. 2006).

Mr. Burrelli contends that Chief Julian's failure to properly investigate the alleged vehicle thefts violated his due process and equal protection rights under the United States Constitution. To maintain a due process challenge, the plaintiff must first establish the deprivation of a protected liberty or property interest. *Miller v. Workers' Comp. Appeal Bd. (Pavex, Inc.)*, 918 A.2d 809, 812 (Pa. Cmwlth. 2007). It is only when a plaintiff establishes the deprivation of a protected interest that the court will consider what type of procedural mechanism is required to satisfy due process. *Id.*

Mr. Burrelli premises his due process claim on Chief Julian's alleged failure to comply with the reporting requirement of Section 7113(a) of the Vehicle Code, which

---

MR. BURRELLI: *I would agree to that*, but that does not prove ownership. . . .

N.T., 7/13/17, at 15 (emphasis added).

[17] Our review of the Trial Court's grant "of summary judgment is limited to determining whether the [T]rial [C]ourt committed an error of law or an abuse of discretion." *Kaplan v. Southeastern Pa. Transp. Auth.*, 688 A.2d 736, 738 n.2 (Pa. Cmwlth. 1997).

14

directs the police department to "immediately furnish the State Police with full information about [a] stolen vehicle." 75 Pa. C.S. § 7113(a). However, we agree with the Trial Court that whether Chief Julian complied with Section 7113(a) is irrelevant to Mr. Burrelli's constitutional claims.

Section 1983 does not provide a remedy for the violation of a state statute. Rather, it creates a federal cause of action against those who "acting under color of state law" cause a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws (of the United States)." 42 U.S.C. § 1983. With regard to federal due process claims, our Court recently stated:

> The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension. Thus, *violations of state statutes . . . that require certain procedures, which are not compelled by the Federal Constitution because there is no liberty interest that those state mandated procedures protect, do not make out a [due process] claim . . . .*

*Shore v. Pa. Dep't of Corr.*, 168 A.3d 374, 386 (Pa. Cmwlth. 2017) (emphasis added) (quotation omitted). Thus, Mr. Burrelli cannot premise a federal due process claim on Chief Julian's alleged violation of Section 7113(a) of the Vehicle Code because that statute does not confer on Mr. Burrelli a protected property or liberty interest under the Fourteenth Amendment.

Furthermore, as the Trial Court correctly concluded, an individual has no protected liberty interest in the investigation or prosecution of another person. Our Court has explained:

> It is well settled that a crime is an offense against the sovereign. It injures not just the victim but the public at large and is punished by way of a judicial proceeding in the Commonwealth's name. Prosecutions do not settle private grievances but, rather, rectify the injury done to the Commonwealth. *The only recourse of one, such as Murphy, who has been*

15

*the victim of the crime is to pursue the perpetrator, not [the City], in a civil action. In no case does a victim's recourse extend to compelling the Commonwealth to prosecute, or even investigate a crime.*

*Murphy v. City of Duquesne*, 898 A.2d 676, 680 (Pa. Cmwlth. 2006) (emphasis added).

In *Sanders v. Downs*, 420 Fed. App'x 175 (3d Cir. 2011), the United States Court of Appeals for the Third Circuit rejected precisely the same claims as asserted in this case.[18] Sanders alleged that thousands of dollars of personal property had been stolen from his home by a houseguest while he was incarcerated. *Id.* at 178. In his Complaint, Sanders alleged that he made several attempts to obtain assistance from the police, prosecutors, and the court but was repeatedly ignored. *Id.* Sanders filed a civil rights action against the state and local police under Section 1983, alleging violations of his due process and equal protection rights. *Id.* at 180. In rejecting Sanders' constitutional claims, the Third Circuit concluded as follows:

> The District Court also properly dismissed Sanders' claims that officials violated his right to due process by failing to properly respond to the reports of alleged thefts from his home. As to Sanders' claim against the Pennsylvania State Police and the Bradford County police officers, the District Court correctly reasoned that there is no constitutional right to the investigation or prosecution of another. *See Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) (observing that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"). . . .

> Relatedly, Sanders asserted throughout his amended complaint that the police and prosecutors' failure to respond to his complaints violated his right to equal protection under the Fourteenth Amendment. The District Court reasoned that Sanders' equal protection argument failed for

---

[18] While federal court decisions are generally not binding on this Court, even when a federal question is involved, they may have persuasive value. *See GGNSC Clarion LP v. Kane*, 131 A.3d 1062, 1069 n.15 (Pa. Cmwlth.), *aff'd*, 152 A.3d 983 (Pa. 2016).

the same reason as his due process argument: there is no constitutional right to a criminal investigation or a prosecution. However, an equal protection analysis concerns whether government actors discriminated against an individual for an impermissible reason, such as race, religion, or some other unjustifiable classification. *See Price v. Cohen*, 715 F.2d 87, 91-92 (3d Cir.1983). An appropriate reason for dismissing Sanders' equal protection claim, then, is that he failed to allege that he was discriminated against on an impermissible basis. To the extent that Sanders alleged that he was discriminated against based on his status as a felon, he did not allege that felons, as a class, receive disparate treatment; nor did he allege that non-felons receive more help.

*Id*.

We reject Mr. Burrelli's constitutional claims for the same reasons as in *Sanders*. Because Mr. Burrelli has neither alleged any facts nor produced any evidence to establish a federal constitutional violation, we agree with the Trial Court that Chief Julian was entitled to judgment as a matter of law.[19]

---

[19] Mr. Burrelli also filed a Section 1983 action against Chief Julian and other members of the Department in Federal Court, wherein Mr. Burrelli asserted the same factual allegations and constitutional claims as in this case. *See* Trial Ct. Op., 7/21/17, at 5 n.5; N.T., 7/13/17, at 13. In a memorandum order, the United States District Court for the Western District of Pennsylvania rejected Mr. Burrelli's claims and granted the defendants' Motion for Summary Judgment. *See Burrelli v. Julian*, No. 2:16cv252, 2018 WL 1122650 (W.D. Pa. filed Mar. 1, 2018). The District Court concluded:

[Mr. Burrelli] has failed to advance any facts to dispute the moving defendants' account of the investigation undertaken in response to [Mr. Burrelli's] initial complaints. He likewise has failed to advance any evidence to present contrary factual events that would support a finding that his constitutional rights were violated.

Where a non-moving party fails to meet his or her burden at summary judgment by advancing evidence which demonstrates the existence of a material issue of fact for trial, the record will be taken as presented by the moving party and summary judgment will be entered as a matter of law. It is exactly such a disposition that is warranted here.

*Id.* at *2 (internal citation omitted).

## Conclusion

In sum, we conclude that Mr. Burrelli's allegations are clearly insufficient to establish a constitutional violation under Section 1983 since he has no constitutional right to the investigation or prosecution of another person. As this is Mr. Burrelli's sole cause of action, the Trial Court properly granted Summary Judgment in Chief Julian's favor and dismissed the Complaint with prejudice. Accordingly, we affirm the Trial Court's Order.

_____
ELLEN CEISLER, Judge

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael J. Burrelli, : 
                Appellant : 
                : 
        v. :         No. 1399 C.D. 2017
                : 
Mark Julian : 

O R D E R

AND NOW, this 17th day of May, 2018, the Order of the Lawrence County Court of Common Pleas, dated July 21, 2017, is hereby affirmed.

_____
ELLEN CEISLER, Judge